

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-75,200

### CHELSEA LEA RICHARDSON, Appellant

### v.

### THE STATE OF TEXAS

### ON DIRECT APPEAL FROM CAUSE NO. 0929234A
### IN THE 297TH JUDICIAL DISTRICT COURT
### TARRANT COUNTY

**KEASLER, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

On May 24, 2005, a jury convicted Chelsea Lea Richardson of a capital murder that

was committed on December 11, 2003.[1] Based on the jury's answers to the special issues set

forth in Texas Code of Criminal Procedure Article 37.071, Sections 2(b) and 2(e), the trial

judge sentenced Richardson to death.[2] Raising eight points of error, Richardson appeals the

---

[1] TEX. PENAL CODE ANN. § 19.03(a)(7) (Vernon 2003).

[2] TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(g) (Vernon Supp. 2003).

trial court's judgment and death sentence.  We conclude that Richardson's points of error are without merit.  Accordingly, we affirm the trial court's judgment and sentence of death.

**Facts**

Richardson and her boyfriend, Andrew Wamsley, and their friend, Susan Toledano, plotted to murder Andrew's parents, Rick and Suzanna Wamsley.  The trio had a simple motive—to divide the Wamsleys' substantial estate and insurance proceeds that Andrew would inherit.  The three conspirators contrived several plans and bungled two murder attempts.  On their third attempt, they killed the Wamsleys in a violent and bloody attack.

At trial, fellow conspirator Toledano testified that she, Richardson, and Andrew had devised several plans for killing the Wamsleys.  The plans included staging a robbery where the Wamsleys were killed, putting balloons filled with caustic chemicals in the gas tank of the Wamsleys' vehicle, presumably to cause an explosion, cutting the vehicle's brake lines to cause an accident, and shooting the vehicle while the Wamsleys were traveling in it, which the conspirators believed would cause it to explode.  The trio eventually settled on a plan to travel alongside the Wamsleys' vehicle and shoot its gas tank with a gun they had obtained from another friend, Hilario Cardenas.  Andrew would drive while Toledano would shoot, and Richardson would stay home to provide an alibi.  But the plan proved unsuccessful when, despite hitting the moving vehicle, it did not burst into flames as expected but continued down the road.

Later, the trio made another attempt to murder the Wamsleys. According to Toledano,

she was to hide in Andrew's closet and shoot the Wamsleys after they went to sleep. However, despite persistent encouragement from Richardson and Andrew as she remained secreted, Toledano foiled the scheme by refusing to go through with the killings. The three regrouped and decided to try again another night.

Toledano testified that she, Richardson, and Andrew returned as planned. Upon entering the Wamsleys' home, Richardson encouraged Toledano to shoot Suzanna Wamsley as she lay asleep on the living room couch, and Richardson even shoved Toledano into the room to get her going. With this initial impetus, Toledano rushed Suzanna and shot her in the head, killing her instantly. Immediately after, Toledano ran toward the Wamsleys' bedroom and began firing at Rick Wamsley as he charged toward her, hitting him in the right temple. Unrelenting, Rick forced Toledano back into the living room and fell on top of her, causing her to drop the gun. As the two struggled, Andrew intervened, trying to force Rick—his own father—off of Toledano, and Richardson joined the fray by shooting Rick in the back. Eventually, the trio stood facing Rick, who was still alive, as he sat on the floor. While Rick pleaded to know why all of this was happening, Richardson thrust a knife she had taken from the kitchen at him, stabbing his hand as he tried to block the attack. Soon after, Toledano stabbed him in the back with another kitchen knife as he lay on the ground. Rick Wamsley died, and the three left.

### Sufficiency of the Evidence

In points of error one through three, Richardson challenges the sufficiency of the

evidence. She alleges that the State failed to meet its burden by introducing insufficient evidence at trial, both legally and factually, to support her conviction. She also challenges the trial judge's denial of her motion for directed verdict. Because a challenge to a trial judge's decision to overrule a motion for a directed verdict presents an attack to the legal sufficiency of the evidence,[3] we will review the trial judge's ruling while considering the legal sufficiency of the evidence.

To find Richardson guilty, the jury had to believe that the State had proven beyond a reasonable doubt that Richardson intentionally caused the Wamsleys' deaths during the same criminal transaction.[4] The jury was authorized to convict Richardson either as a principal or as a party to their murders.[5]

In deciding whether the evidence is legally sufficient to sustain a conviction, we must determine "whether, after viewing the evidence in the light most favorable to the verdict, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[6] "The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony."[7] Additionally, "reconciliation of conflicts in the evidence is within

---

[3] *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997).

[4] *See* TEX. PENAL CODE ANN. § 19.03 (a)(7)(A).

[5] *See* TEX. PENAL CODE ANN. § 7.01 (Vernon 2003).

[6] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

[7] *Jones*, 944 S.W.2d at 647.

the exclusive province of the jury."[8]   In short, if any rational juror could have found the elements to have been proven beyond a reasonable doubt, we will not disturb the verdict on appeal.[9]

In deciding whether the evidence is factually sufficient to sustain a conviction, we will assume that the evidence is legally sufficient, but we will view "all of the evidence in the record without the prism of 'in the light most favorable to the verdict.'"[10]   That is, rather than just viewing the evidence that supports the verdict, we will review the evidence that tends to prove the existence of the elemental fact in dispute as compared to the evidence that tends to disprove that fact.[11]   In reviewing factual sufficiency, then, we may disagree with the jury's verdict, even if probative evidence exists that supports it, but we will set the jury's verdict aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.[12]   "Examples of such a wrong and unjust verdict include instances in which the jury's finding is 'manifestly unjust,' 'shocks the conscience,' or 'clearly demonstrates bias.'"[13]

---

[8]  *Id.*

[9]  *Id.*

[10]  *Id.* at 647 (citing *Clewis v. State*, 922 S.W.2d 126, 131-32 (Tex. Crim App. 1996)); *see also Watson v. State*, 204 S.W.3d 404, 405, 414-17 (Tex. Crim. App. 2006).

[11]  *Jones*, 944 S.W.2d at 647.

[12]  *Id.* at 647-48.

[13]  *Id.* at 648 (citing *Clewis*, 922 S.W.2d at 135).

Regarding legal sufficiency, viewed in the light most favorable to the verdict, the testimony and evidence at trial showed that Richardson participated in the planning of the murders, aided in the two failed attempts to murder the Wamsleys, and was present during, encouraged, and participated in the final attempt during which the Wamsleys were killed. Toledano testified that she heard Richardson planning the murders with Andrew and that Richardson went with her and Andrew on the night that the Wamsleys were killed. Toledano further testified that Richardson encouraged her to kill the Wamsleys while in the Wamsleys' home and that Richardson physically shoved her into the living room to get her going. Her testimony also indicated that Richardson shot Rick Wamsley in the back and stabbed him. Corroborating Toledano's testimony, two witnesses who had been incarcerated at the county jail with Richardson testified that Richardson admitted to participating in the murders and to shooting Rick Wamsley. Testimony also revealed that Richardson asked another friend, who was mentally challenged, to provide her with an alibi for the night of the murders and that she even convinced this same friend to lie to the grand jury investigating the murders.

The jury is the sole judge of the weight and credibility of witness testimony,[14] and as we have held, "Evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the commission of the offense and encourages the commission of the offense either by words or other agreement."[15] Given all of the evidence

[14] *Ortiz v. State*, 93 S.W.3d 79, 88 (Tex. Crim. App. 2002).

[15] *Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986).

presented at trial, any rational trier of fact could have found beyond a reasonable doubt that Richardson intentionally caused the Wamsleys' deaths in the same criminal transaction. The evidence supporting the conviction is legally sufficient. Further, because the evidence is legally sufficient, the trial judge did not err in denying Richardson's motion for directed verdict. We therefore overrule Richardson's first and second points of error.

Regarding factual sufficiency, Richardson argues that most of the evidence indicating that she participated in the murders came from the testimony of Toledano, an accomplice who struck a deal with the State for a life sentence in exchange for her testimony. She claims that Toledano's testimony is not reliable because of the varying version of events that Toledano had given to the police, to the grand jury, and to the jury at trial. As a result, she contends that we can have no confidence in the jury's verdict. Richardson also urges us to require independent corroboration of the jailhouse-informant testimony like that required of accomplice-witness testimony.[16] She argues that there was no such corroboration here and asks us to discount the jailhouse-informant testimony that Richardson admitted to participating in the murders and to shooting Rick Wamsley.

As we indicated above, the jury is the sole judge of the weight and credibility of witness testimony, and reconciliation of conflicts in the evidence is within its exclusive province.[17] The jury could believe or not believe any testimony presented at trial and could

---

[16] *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005), *added by* Acts 1965, 59th Leg., ch. 722, eff. Jan. 1, 1966.

[17] *Ortiz*, 93 S.W.3d at 88; *Jones*, 944 S.W.2d at 647.

assign to the testimony whatever weight it wished. The jury listened to Toledano's testimony and that of the jailhouse informants, and defense counsel pointed out on cross-examination reasons why the testimony should not be believed. Due deference must be accorded to the jury regarding the weight and credibility of the evidence, and we see no reason to conclude that the jury's verdict is manifestly unjust, shocks the conscience, or clearly demonstrates bias. The jury's finding that Richardson intentionally killed the Wamsleys during the same criminal transaction is not so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. The evidence supporting Richardson's conviction is factually sufficient; therefore, we overrule her third point of error.

**Erroneously Admitted Testimony**

In point of error six, Richardson contends that the trial judge erred in overruling her objections to a portion of Kathryn Norton's testimony. Norton, who had been housed in the Tarrant County Jail with Richardson, testified how she was able to contact the District Attorney's Office through her father to reveal admissions Richardson had made implicating herself in the murders. On direct examination, the following exchange took place between Norton and the prosecutor:

| [Prosecutor]: | Were you revoked on that probation? |
|---|---|
| [Norton]: | Yes. |
| [Prosecutor]: | And where were you sent? |
| [Norton]: | I was sent to Tarrant County. |
| [Prosecutor]: | Then where were you sent after that? |
| [Norton]: | To Dawson State Jail. |
| [Prosecutor]: | At that time when you were in Dawson State Jail, did you make contact with the District Attorney's office? |

| | |
|---|---|
| [Norton]: | My dad actually did. |
| [Prosecutor]: | And why did your dad? |
| [Norton]: | He told my lawyer about what -- |
| [Defense Counsel]: | Objection as to hearsay as to what her father said. |
| [Trial Court]: | Well, I'm gonna overrule that particular objection at this time. |
| [Defense Counsel]: | I make a 403 objection to her statement then, Judge. |
| [Trial Court]: | Overruled. |
| [Defense Counsel]: | What her father says, it's a 403 issue. |
| [Trial Court]: | Overruled. The State may continue to ask the questions. |
| [Prosecutor]: | You can answer that question. |
| [Norton]: | My dad told my lawyer that -- what happened to me in jail and that I was with somebody who did something bad, and my lawyer went to you guys. |
| [Prosecutor]: | Did your dad do that because he received something in the mail? |
| [Norton]: | Yes. |
| [Prosecutor]: | What did he receive in the mail? |
| [Norton]: | He received a letter from Chelsea. |

In arguing her sixth point of error, Richardson does not attack the heart of Norton's testimony regarding the admissions Richardson had made. Rather, Richardson only argues that some of Norton's testimony concerning how she was able to contact the District Attorney's Office was introduced in violation of Rule 802 (hearsay) and Rule 403 (exclusion of relevant evidence) of the Texas Rules of Evidence. Even assuming that the challenged statement was inadmissible and was erroneously admitted, such a breach of the evidentiary rules does not raise constitutional concerns and must be disregarded unless the erroneously admitted testimony affected Richardson's substantial rights.[18] Here, we conclude that

---

[18] *Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005); Tex. R. App. P. 44.2(b) (Vernon 2003).

Richardson's substantial rights were not affected.

Substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect."[19] In assessing the likelihood that the jury's decision was adversely affected by the error, we "consider everything in the record, including the testimony and physical evidence admitted, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case."[20] We may also consider voir dire, jury instructions, closing arguments, the State's theory, any defensive theories, whether the testimony was elicited from an expert, whether the testimony was cumulative, and whether the State emphasized the error.[21]

A review of the record as a whole reveals that the challenged bit of Norton's testimony can be characterized only as insignificant and non-contributing to Richardson's conviction and death sentence. It did not concern the substance of Norton's testimony regarding Richardson's admissions and was never referenced by the State at any other time in the trial. Indeed, it occupies only one sentence of the thirty-two-volume reporter's record taken during the six-day trial. The only portion that may even be viewed as potentially

---

[19] *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

[20] *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

[21] *Id.*; *Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002); *Solomon*, 49 S.W.3d at 365; *King v. State*, 953 S.W.2d 266, 272 (Tex. Crim. App. 1997).

damaging is the phrase intimating that Richardson was "somebody who did something bad."

But considering this statement against the entirety of the record, including fellow conspirator

Toledano's testimony detailing Richardson's planning, involvement, and execution of the

murders, testimony that Richardson had twice admitted to involvement in the murders,

testimony that Richardson had admitted to shooting and stabbing Rick Wamsley, testimony

that Richardson asked a mentally challenged friend to provide her with an alibi for the night

of the murders, and testimony that Richardson also convinced this same friend to lie to the

grand jury investigating the murders, we cannot conclude that the challenged testimony, even

assuming it was erroneously admitted, affected Richardson's substantial rights. Richardson's

sixth point is therefore overruled.

### Constitutionality of Death-Penalty Scheme

In point of error four, Richardson contends that the trial judge erred in failing to grant

her motion to preclude the imposition of the death penalty. Citing to *Ring v. Arizona*[22] and

*Apprendi v. New Jersey*,[23] Richardson argued that the Fifth and Fourteenth Amendments

require the grand jury to allege the special issues in the indictment before the State can seek

the death penalty. We have already rejected this same argument.[24] Point of error four is

overruled.

---

[22]  536 U.S. 584 (2002).

[23]  530 U.S. 466 (2000).

[24]  *See Russeau v. State*, 171 S.W.3d 871, 886 (Tex. Crim. App. 2005).

In point of error five, Richardson contends that the trial judge erred in overruling her motion to instruct the jury that the State has the burden of proof to demonstrate beyond a reasonable doubt that there was an absence of sufficient mitigation evidence to warrant a life rather than death sentence. She alleged that such an instruction is required under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. We have already rejected this same argument.[25] Point of error five is overruled.

In point of error seven, Richardson maintains that the trial judge erred in denying her motion to declare the Texas death-penalty statute unconstitutional under the Fifth, Eighth, and Fourteenth Amendments. Richardson argued in her motion that the term "probability" as used in the future-dangerousness special issue requires the jury to engage in a "vague and indefinite inquiry" utilizing a statute that is "incapable of interpretation by reasonable men." Richardson further complained that the statute "provides no guidelines or other statutory limitations" concerning whether there is a probability that she would commit criminal acts of violence that would constitute a continuing threat to society.[26] We have already rejected this and similar arguments.[27] Point of error seven is overruled.

Richardson contends in point of error eight that the use of a chemical substance

---

[25] *See Hankins v. State*, 132 S.W.3d 380, 386 (Tex. Crim. App. 2004).

[26] *See* TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(b)(1).

[27] *See Druery v. State*, 225 S.W.3d 491, 509-10 (Tex. Crim. App.), *cert. denied*, 169 L. Ed. 2d 404 (Nov. 13, 2007) (citing *King v. State*, 553 S.W.2d 105, 107 (Tex. Crim. App. 1977)).

pancuronium bromide to carry out her execution violates the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment. Richardson's execution is not imminent, however, and the method in which the lethal injection is currently administered is not determinative of the way it will be administered at the moment of Richardson's execution. Thus, this claim is not ripe for review.[28] Point of error eight is overruled.

## Conclusion

Based on the foregoing, we affirm the judgment of the trial court.

DELIVERED: January 23, 2008
DO NOT PUBLISH

---

[28] *See Gallo v. State*, No. AP-74,900, 2007 Tex. Crim. App. LEXIS 1234, at *54 (Tex. Crim. App. Sept. 26, 2007).