

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
**AP-75,217**
---

**HUMBERTO GARZA, Appellant**

**v.**

**THE STATE OF TEXAS**

---
**ON DIRECT APPEAL
FROM CAUSE NO. CR-3175-04-G IN THE 370TH DISTRICT COURT[1]
HIDALGO COUNTY**
---

**COCHRAN, J., delivered the opinion of the unanimous Court.**

**O P I N I O N**

Appellant was indicted for two counts of capital murder.[2]   In March 2005, the jury

convicted appellant of the lesser-included offense of murder in Count One and assessed a life

---

[1]  Appellant was also indicted under Cause Number CR-0947-03-G for murdering more than one person during the same criminal transaction.  TEX. PENAL CODE § 19.03(a)(7).  On October 19, 2004, the trial court ordered that cause to be "merged into CR-3175-04-G."

[2]TEX. PENAL CODE §§ 19.03(a)(2) and 19.03(a)(7).

sentence.[3] The jury also convicted appellant of capital murder in Count Two.[4] Based on the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, sections 2(b) and 2(e), the trial judge sentenced appellant to death for Count Two.[5] The direct appeal of Count Two to this Court is automatic.[6] After reviewing appellant's thirty-three points of error, we affirm the trial court's judgment and sentence of death in Count Two.

I.

STATEMENT OF FACTS

This trial involved the gang-related, "pseudo-cop" robbery-homicide of six men, some of whom were members of the "Texas Chicano Brotherhood," a rival gang of the "Bombitas" or "Tri-City Bombers" gang to which appellant belonged.

In the early morning hours of January 5, 2003, police responded to a 911 call and found the bodies of six men at 2915 East Monte Cristo Road in Edinburg. There were two houses on the property that were separated by a dirt driveway. Police found the body of Jerry Hidalgo in the kitchen of the larger house that was located on the west side of the driveway

---

[3] TEX. PENAL CODE § 19.02(b).

[4] TEX. PENAL CODE § 19.03(a)(2).

[5] TEX. CODE CRIM. PROC. art. 37.071, § 2(g).

[6] Id., art. 37.071, § 2(h).

(the "west-side house").[7] He was lying face down on the floor and his hands and legs were bound with extension cords. He had sustained numerous gunshot wounds, and there was a bullet hole in his back and blood around his head. The living room had been ransacked, and it appeared that someone had rummaged through one of the bedrooms, leaving the mattress standing on its side.

The body of Juan Delgado, III, was lying face down in the grass outside the front door of the smaller house on the east side of the driveway (the "east-side house"). He had suffered a fatal gunshot wound to the back of his neck. As they entered the house, police discovered the bodies of Juan Delgado, Jr., who had been shot in the back and head, and Jimmy Almendarez, who had suffered multiple gunshot wounds, including a fatal head wound. The bodies of Ray Hidalgo and Ruben Castillo were in another room. Ray had sustained two gunshot wounds to the head and was missing an eye. Ruben had suffered multiple gunshot wounds including shots to the buttocks. The "east-side house" had also been ransacked, and the victims' pockets had been pulled out.

Police received information about a "pseudo-cop" robbery and took various suspects into custody, including appellant. Following his arrest, appellant gave a statement in which he admitted that he was a "captain" of the Tri-City Bombers, and that he and several other gang members put together a plan to steal what they believed was a significant amount of marihuana from the rival gang. He described his planning of the robbery and its ultimate

---

[7] The "west-side house" had a kitchen, living room, two bedrooms, and a utility room. There was a storage shed behind it. An outhouse was located behind the "east-side house."

execution, but denied being one of the actual killers. He stated that he and another gang member had "dropped off" the robbers at the murder scene and then picked them up afterwards.

## II.

In his first point of error, appellant contends that the trial court violated the federal and state constitutional protections against double jeopardy by subjecting him to multiple prosecutions and multiple punishments for the same offense.[8] Appellant admits that he did not make a double-jeopardy objection at trial. However, because of the "fundamental nature of the double-jeopardy protections," a double-jeopardy claim may be raised for the first time on appeal (1) when the undisputed facts show the double-jeopardy violation is clearly apparent on the face of the record and (2) when enforcement of the usual rules of procedural default serves no legitimate state interest.[9]

Count One of the indictment alleged that appellant

> . . . did then and there intentionally and knowingly cause the deaths of Jimmy Almendariz, Juan Delgado, III, Jerry Eugene Hidalgo, Juan Delgado, Jr., Ruben Castillo, and Ray Hidalgo, by shooting them with a firearm, and said murders were committed during the same criminal transaction[.]

Count Two of the indictment alleged that appellant:

---

[8] U. S. CONST. amend. V; TEX. CONST. art. I, § 14. Appellant also claims that "[c]ollateral estoppel bars the conviction and sentence in the second prosecution styled 'Count Two.'" This claim is multifarious. TEX. R. APP. P. 38.1(h). It is also without merit. As discussed herein, appellant was convicted and sentenced on both counts in a single proceeding. There was no "second prosecution."

[9] *Gonzalez v. State,* 8 S.W.3d 640, 642-643 (Tex. Crim. App. 2000).

. . . did then and there intentionally and knowingly cause the deaths of Jimmy Almendariz, Juan Delgado, III, Jerry Eugene Hidalgo, Juan Delgado, Jr., Ruben Castillo, and Ray Hidalgo, by shooting them with a firearm, and the defendant was then and there in the course of committing or attempting to commit the offense of robbery of Jimmy Almendariz, Juan Delgado, III, Jerry Eugene Hidalgo, Juan Delgado, Jr., Ruben Castillo, and Ray Hidalgo, and the defendant did then and there commit said capital murder as a member of a criminal street gang[.]

There were two jury charges, one for each count of capital murder. The charge in Count One defined capital murder as the murder of "more than one person during the same criminal transaction," and it authorized the jury to convict appellant as a party.[10] The charge in Count Two defined capital murder as murder "in the course of committing or attempting to commit the offense of Robbery," and authorized the jury to convict appellant as a party or a conspirator.[11] Both charges contained the same instruction on the lesser-included offense of murder:

Now, if you believe from the evidence beyond a reasonable doubt that on or about JANUARY 5, 2003 in Hidalgo County, Texas, ROBERT GENE GARZA a/k/a "BONES", RODOLFO MEDRANO a/k/a/ "CREEPER", MARCIAL BOCANEGRA a/k/a "MARSHALL", JUAN RAMIREZ a/k/a "RAM" a/k/a "LENNY", JUAN CORDOVA a/k/a "JUANON", SALVADOR SOLIS, a/k/a "LITTLE SAL", RICARDO MARTINEZ a/k/a "RICA" or "RICK", JUAN MIGUEL NUNEZ a/k/a "PERRO", REYMUNDO SAUCEDA a/k/a "KITO", JORGE ESPINOZA MARTINEZ, a/k/a "CHOCHE", or ROBERT CANTU a/k/a "ROBBIE," hereinafter known as CO-DEFENDANTS, did then and there did commit [sic] the felony offense of aggravated robbery of Jimmy Almendariz, Juan Delgado, III, Jerry Eugene Hidalgo, Juan Delgado, Jr., Ruben Castillo, or Ray Hidalgo, and that while in the commission of said aggravated robbery, if any, or while in immediate flight

---

[10] TEX. PENAL CODE § 7.02(a).

[11] TEX. PENAL CODE §§ 7.02(a) and 7.02(b).

from the commission of such aggravated robbery, if any, one or more of the said CO-DEFENDANTS, did intentionally or knowingly or recklessly shoot any one of the following persons: Jimmy Almendariz, Juan Delgado, III, Jerry Eugene Hidalgo, Juan Delgado, Jr., Ruben Castillo, or Ray Hidalgo, and said act or acts were, under the circumstances then and there existing, were clearly dangerous to human life and that said acts or acts [sic] caused the death of any one of the following persons: Jimmy Almendariz, Juan Delgado, III, Jerry Eugene Hidalgo, Juan Delgado, Jr., Ruben Castillo, or Ray Hidalgo, and the Defendant, HUMBERTO GARZA, then and there knew of the intent, if any, of one or more of the said CO-DEFENDANTS, to rob Jimmy Almendariz, Juan Delgado, III, Jerry Eugene Hidalgo, Juan Delgado, Jr., Ruben Castillo, and Ray Hidalgo, by shooting any one of the following persons: Jimmy Almendariz, Juan Delgado, III, Jerry Eugene Hidalgo, Juan Delgado, Jr., Ruben Castillo, or Ray Hidalgo with a firearm, and the Defendant acted with intent to promote or assist the commission of the offense of aggravated robbery by one or more of the CO-DEFENDANTS, by encouraging, directing, aiding or attempting to aid one or more of the CO-DEFENDANTS, to commit the offense of aggravated robbery of Jimmy Almendariz, Juan Delgado, III, Jerry Eugene Hidalgo, Juan Delgado, Jr., Ruben Castillo, and Ray Hidalgo, by being leader of the gang giving the okay to commit the offense, by planning the offense, by ordering gang members to commit the offense, by calling Creeper to bring the weapons, by selecting certain gang members to participate in the offense, by gathering the gang members at Juanon's house, by planning to approach the victims' location from the empty field north of the victims' location, by explaining the victims' location to the group, by calling Bones to participate, by calling Ram to participate, by calling Rick to participate, by calling Kito to participate, by calling Perro to participate, by calling Little Sal to participate, by calling Marcial to participate, by arranging transportation to and from the victims' location, by driving participants to the victims' location, or by driving participants from the victims' location, then you will find the Defendant, HUMBERTO GARZA, guilty of the offense of Murder.[12]

With regard to Count One, the jury found appellant guilty of the lesser-included offense of murder and assessed a life sentence. With regard to Count Two, the jury found appellant guilty of capital murder, and the trial court sentenced appellant to death.

---

[12] This quoted instruction is worded exactly as it appears in the Count One charge. There are a few minor grammatical variations in the Count Two charge.

The double-jeopardy clause protects against multiple prosecutions for the same offense following acquittal or conviction.[13] It also protects against multiple punishments for the same offense.[14] Here, the "multiple prosecutions" aspect is not implicated because appellant was convicted and sentenced in a single proceeding.[15] Thus, we are concerned only with the "multiple punishments" aspect in this case.[16] A multiple-punishments claim can arise in two contexts: (1) the lesser-included-offense context, in which the same conduct is punished twice–once for the basic conduct, and a second time for that same conduct plus more; and (2) punishing the same criminal act twice under two distinct statutes when the legislature intended the conduct to be punished only once.[17]

In this case, the application paragraphs for the lesser-included offense of murder in

---

[13] *Villanueva v. State,* 227 S.W.3d 744, 747 (Tex. Crim. App. 2007) (citing *Ex parte Kopecky*, 821 S.W.2d 957, 958 (Tex. Crim. App. 1992)).

[14] *Id.*

[15] *See id.*

[16] We recently addressed a "multiple punishments" double-jeopardy claim for one of appellant's co-defendants. *Ramirez v. State,* No. AP-75,167 (Tex. Crim. App. Dec. 12, 2007) (not designated for publication). Ramirez was convicted of capital murder and sentenced to death in two separate counts. In *Ramirez*, as in the present case, one count alleged murder in the course of robbery under Section 19.03(a)(2) and one count alleged the murders of more than one person during the same criminal transaction under Section 19.03(a)(7). *Id.,* slip. op. at 11. In *Ramirez* and in this case, both counts arose from the same conduct on the same date involving the same victims. *Id.* We held in *Ramirez* that the same evidence that formed the basis for "the same criminal transaction" element in one count also formed the basis for the robbery element in the other count and that there was only one "allowable unit of prosecution" under the statute in that circumstance. *Id.,* slip. op. at 11-12. We held that Ramirez had been subjected to multiple punishments for the same offense in violation of double-jeopardy, and we reversed his conviction and vacated his death sentence on one of the counts. *Id.,* slip. op. at 12.

[17] *Langs v. State,* 183 S.W.3d 680, 685 (Tex. Crim. App. 2006).

Count One and Count Two were the same. Thus, the same conduct was punished twice: first in Count One for the "basic conduct" of murder and a second time in Count Two for "that same conduct plus more." It is clearly apparent from the face of the record that appellant was subjected to multiple punishments for the same offense in violation of the federal and state constitutional protections against double-jeopardy. And because both convictions arise out of the same trial, enforcement of the usual rules of procedural default would serve no legitimate state interest.[18] Thus, we will sustain appellant's first point of error.

When a defendant is convicted of two offenses that are the "same" for double-jeopardy purposes, the "most serious" offense is retained and the other conviction is set aside.[19] The "most serious" offense is generally the offense of conviction for which the greatest sentence was assessed.[20] Here, the most serious offense is appellant's capital murder conviction in Count Two, for which he received the death sentence. Thus, we retain appellant's capital murder conviction and death sentence in Count Two.[21]

In point of error two, appellant argues that the trial court "erred in imposing death as

---

[18] *Johnson v. State,* 208 S.W.3d 478, 510 (Tex. App.–Austin 2006, pet. ref'd); *Honeycutt v. State,* 82 S.W.3d 545, 547 (Tex. App.–San Antonio 2002, pet. ref'd).

[19] *Ex parte Cavazos,* 203 S.W.3d 333, 337 (Tex. Crim. App. 2006).

[20] *Id.* at 338.

[21] Appellant's appeal from his murder conviction and life sentence in Count One, *Garza v. State,* No. 13-05-00397-CR, is currently pending in the Thirteenth Court of Appeals. Because appellant's capital murder conviction and death sentence in Count Two is retained as "the most serious offense," the Thirteenth Court of Appeals may consider reversing appellant's murder conviction on double-jeopardy grounds.

a sentence where the jury returned verdicts of both not guilty and guilty of capital-murder, under the same factual basis." In point of error three, he complains that the charge and verdict form failed to inform the jurors "whether a murder of more than one person in the same transaction would include a murder in the course of a robbery." Appellant's arguments are based on the faulty premise that his murder conviction in Count One amounted to an acquittal of the capital-murder alleged in Count Two.

Appellant also asserts that "the Eighth Amendment requires that it be the death verdict that is set aside." As we have already stated, when a defendant is convicted of two offenses that are the "same" for double-jeopardy purposes, the "most serious" offense is retained and the other conviction is set aside.[22] The "most serious offense" test is not an "arbitrary rule," as appellant argues. One reason that we apply the "most serious offense" test to double-jeopardy violations is to eliminate arbitrariness in determining "greater" and "lesser" offenses.[23] Because appellant's points of error two and three are without merit, we overrule them.

In point of error four, appellant claims that counsel "failed to preserve his right (1) not to be twice placed in jeopardy for the same offense; (2) to have his guilt case decided by jurors who were informed that the second count of the indictment was included in the first; and (3) to have his acquittal of capital-murder [in Paragraph 1 of the indictment] given

---

[22] *Cavazos,* 203 S.W.3d at 337.

[23] *Bigon v. State*, ___ S.W.3d ___, ___, Nos. PD-1769-06 & PD-1770-06, 2008 Crim. App. LEXIS 1, at *30-31 (Tex. Crim. App. Jan. 16, 2008).

preclusive effect over the later conviction [in Paragraph 2 of the indictment] for the same offense." However, we have already agreed with appellant's double-jeopardy argument, and he does not provide any additional argument or authorities to support an argument that his trial counsel were ineffective under the second and third prongs of his claim. These additional claims are inadequately briefed.[24] Point of error four is overruled.

In point of error six, appellant asserts that he received ineffective assistance of counsel during voir dire. He specifically focuses on the veniremembers who were selected to serve on the jury, arguing that counsel failed to "diligently question [them] about their position, thoughts and feelings about the death penalty for any murder, let alone multiple murder." He also complains that defense counsel failed to ask them if they "could consider a life sentence as the proper punishment for the murder of more than one person in the same transaction." He asserts that "the result of the punishment phase of the trial [was] unreliable" because "the jury members' thoughts and feelings about the death penalty were either unknown, or were so biased in favor of the prosecution, the result of their deliberations was a foregone conclusion."

To prevail on a claim of ineffective assistance of counsel, appellant must show (1) deficient performance and (2) prejudice.[25] "Judicial scrutiny of counsel's performance must

---

[24] *See* TEX. R. APP. P. 38.1.

[25] *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

be highly deferential."[26] To show deficient performance, the defendant must prove by a preponderance of the evidence that his counsel's representation fell below the standard of professional norms.[27] To demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[28]

A *Strickland* claim must be firmly founded in the record, and the record must affirmatively demonstrate its meritorious nature.[29] Direct appeal is usually an inadequate vehicle for raising a *Strickland* claim because the record is generally undeveloped.[30] This is especially true in terms of deficient performance, where counsel's reasons for doing or failing to do something do not appear in the record.[31] Trial counsel should ordinarily be afforded an opportunity to explain his actions before being found ineffective.[32] Absent such an opportunity, the reviewing court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.[33]

---

[26] *Id.* at 689.

[27] *Id.* at 688.

[28] *Id.* at 694.

[29] *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

Each prospective juror was asked in the jury questionnaire to categorize and explain his or her feelings about the death penalty, and the State and defense counsel asked some of them to elaborate during voir dire. The State consistently asked prospective jurors if they could consider the full range of punishment, and defense counsel consistently asked them if they were predisposed on punishment because there were multiple victims. The record also reflects that defense counsel often conferred with appellant before deciding not to challenge prospective jurors. Defense counsel could have had valid strategic reasons for conducting the voir dire as they did. We refuse to speculate about defense counsels' possible voir dire strategy, and we cannot conclude that their conduct was so outrageous that no competent attorney would have engaged in it.[34]

Appellant has also failed to demonstrate prejudice. The result of the jury's deliberations was not "a foregone conclusion," given that it found him guilty of the lesser-included offense of murder and assessed a life sentence in Count One. Point of error six is overruled.

In point of error five, appellant claims that the trial court was biased against him because, after allowing defense counsel to conduct an inadequate voir dire, it seated a "biased jury which was unable to consider life imprisonment as a proper punishment." However, as discussed above, the jurors consistently answered during voir dire that they could consider

---

[34] *See Goodspeed,* 187 S.W.3d at 392-94 (holding that counsel's failure to ask *any* questions during voir dire could not be treated as ineffective assistance without inquiry into reasons for the conduct).

the full range of punishment and that they were not predisposed on punishment because there were multiple victims.

Buried within point of error five in his brief is appellant's claim that the trial court was biased because it allowed defense counsel to proceed to trial without retaining any experts. He alleges that "[b]y sanctioning Defense Counsel's neglect, with regard to defense experts, the Court helped create an unfair trial for [appellant]."[35]

During pre-trial proceedings on February 10, 2005, the State informed the trial court that defense counsel had not provided "notice of experts" as requested. The following exchange occurred:

Court: They are requesting your list.

Defense Counsel: I don't have experts. I'm not going to have any experts.

Court: You are not going to be calling anybody?

Defense Counsel: No, sir.

The trial court then asked the parties to approach the bench for an off-the-record discussion. We do not know the substance of that conversation, and the matter was not mentioned again. Absent a clear showing of bias, a trial court's actions will be presumed to have been correct.[36] Appellant has not made a clear showing of trial-court bias. Point of error five is

---

[35] We understand appellant to be raising this issue solely in terms of trial-court bias, not as a claim of ineffective assistance of counsel. To the extent that he is attempting to raise a *Strickland* argument, his claim is multifarious and inadequately briefed. TEX. R. APP. P. 38.1

[36] *Brumit v. State,* 206 S.W.3d 639, 645 (Tex. Crim. App. 2006).

overruled.

In point of error seven, appellant complains about the capital-murder application paragraph in the Count Two jury charge. He alleges that (1) he was denied his right to the presumption of innocence, (2) the State was relieved of its burden to prove its case beyond a reasonable doubt, and (3) the language in the application paragraph "conveyed to the jury the court's opinion on the merits of the case."

The jury charge in Count Two defined capital-murder as murder "in the course of committing or attempting to commit the offense of Robbery."[37] The capital-murder application paragraph contained two alternative theories of liability, the first authorizing the jury to convict appellant as a party under Section 7.02(a), and the second authorizing the jury to convict appellant as a conspirator under Section 7.02(b). The "party" portion required the jury to find that the co-defendants "intentionally and knowingly cause[d] the deaths" of the victims "by shooting them with a firearm" and that one or more of the co-defendants "were then and there in the course of committing or attempting to commit the offense of robbery" of the victims. It authorized the jurors to convict appellant as a party if they found that

> . . . the Defendant, HUMBERTO GARZA, then and there knew of the intent, if any, of one or more of the said CO-DEFENDANTS, to rob the said JIMMY ALMENDARIZ, JUAN DELGADO, III, JERRY EUGENE HIDALGO, JUAN DELGADO, JR., RUBEN CASTILLO, and RAY HIDALGO, and the Defendant acted with intent to promote or assist the commission of the offense by one or more of the said CO-DEFENDANTS by encouraging, directing, aiding, or attempting to aid one or more of the said CO-DEFENDANTS, to commit the offense of Murder of the said JIMMY ALMENDARIZ, JUAN

---

[37] TEX. PENAL CODE § 19.03(a)(2).

DELGADO, III, JERRY EUGENE HIDALGO, JUAN DELGADO, JR., RUBEN CASTILLO, and RAY HIDALGO, by being leader of the gang giving the okay to commit the offense, by planning the offense, by ordering gang members to commit the offense, by calling Creeper to bring the weapons, by selecting certain gang members to participate in the offense, by gathering the gang members at Juanon's house, by planning to approach the victims' location from the empty field North of the victims' location, by explaining the victims' location to the group, by calling Bones to participate, by calling Ram to participate, by calling Rick to participate, by calling Kito to participate, by calling Perro to participate, by calling Little Sal to participate, by calling Marcial to participate, by arranging transportation to and from the victims' location, by driving participants to the victims' location, or by driving participants from the victims' location . . .

In contrast, the "conspiracy" portion required the jury to find that the co-defendants "entered into a conspiracy to rob" the victims "and that pursuant thereto did carry out, or attempt to carry out, such conspiracy to rob" the victims "in that . . . in the course of committing theft of personal property" from the victims "to-wit, money, jewelry, drugs, a cell phone, or personal papers, and with intent to obtain or maintain control of said property" the co-defendants "intentionally caused bodily injury" to the victims "to-wit, death, by shooting" the victims "with a firearm or firearms, intending thereby to kill" the victims.[38] It authorized the jurors to convict appellant as a conspirator if they found that

> . . . the Defendant, HUMBERTO GARZA, pursuant to said conspiracy, if any, with the intent to promote and assist [CO-DEFENDANTS] in the commission of said robbery, if any, was acting with and aiding one or more of the said CO-DEFENDANTS in the execution or attempted executions of said robbery of the said JIMMY ALMENDARIZ, JUAN DELGADO, III, JERRY EUGENE HIDALGO, JUAN DELGADO, JR., RUBEN CASTILLO, and RAY HIDALGO, if any, and that the shooting of the said JIMMY ALMENDARIZ, JUAN DELGADO, III, JERRY EUGENE HIDALGO, JUAN DELGADO,

---

[38] The conspiracy portion adds another co-defendant: Jeffrey Juarez a/k/a "Dragon."

JR., RUBEN CASTILLO, and RAY HIDALGO followed in the execution of the conspiracy, if any, of HUMBERTO GARZA and one or more of the said CO-DEFENDANTS to rob the said JIMMY ALMENDARIZ, JUAN DELGADO, III, JERRY EUGENE HIDALGO, JUAN DELGADO, JR., RUBEN CASTILLO, and RAY HIDALGO of his property, and that the shooting of the said JIMMY ALMENDARIZ, JUAN DELGADO, III, JERRY EUGENE HIDALGO, JUAN DELGADO, JR., RUBEN CASTILLO, and RAY HIDALGO by one or more of the said CO-DEFENDANTS, if there was such, was done in furtherance of the conspiracy to rob the said JIMMY ALMENDARIZ, JUAN DELGADO, III, JERRY EUGENE HIDALGO, JUAN DELGADO, JR., RUBEN CASTILLO, and RAY HIDALGO, if any, and was an offense that should have been anticipated as a result of the carrying out of the conspiracy . . .

The general verdict form did not require the jury to specify which theory of party liability it relied upon.[39]

Appellant asserts that "the trial court submitted [the] conspiracy theory to the jury in such a way that he could be convicted of capital-murder under circumstances not giving rise to the anticipation that human life would be taken." He claims that "the jurors likely thought this application paragraph was satisfied if the offense that was or should have been anticipated was the *shooting* of the six named persons, not necessarily the *killing* of them." When we review a charge for alleged error, we must examine the charge as a whole instead of a series of isolated and unrelated statements.[40] The charge stated that the co-defendants' "shooting" of the victims was done in furtherance of the conspiracy to rob and was an offense that should have been anticipated as a result of carrying out the conspiracy. We do

---

[39] The verdict form stated: "We, the Jury, find the Defendant, HUMBERTO GARZA, GUILTY of the offense of Capital-murder as charged in the indictment."

[40] *Dinkins v. State,* 894 S.W.2d 330, 339 (Tex. Crim. App. 1995).

not view this statement in isolation. The charge also stated that the co-defendants "intentionally caused bodily injury" to the victims, "to-wit, death, by shooting" them "with a firearm or firearms, intending thereby to kill" them. Thus, the "shooting" offense that appellant should have anticipated as a result of carrying out the conspiracy was the co-defendants' shooting the victims to death with the intent to kill them. There is no reasonable likelihood that the jury applied the challenged instruction in an erroneous way.[41]

Appellant also contends that the trial court commented on the weight of the evidence by "stating as established fact matters that were elements for the State to prove." He argues that the long list of specific acts in the "party" portion of the charge was unnecessary and called undue attention to the State's theory of the case. He complains about the inconsistent use of the phrase "if any," arguing that its omission in certain places suggested "established facts." He further asserts that the inclusion of the co-defendants' "alias nicknames" was "suggestive of prior criminal activity and predisposition." In sum, he argues: "[B]y telling the jury that [appellant] was the leader of a group of criminals that had done a series of acts resulting in the deaths of six named persons, the court sent the message that the prosecution had proved their case and that the inevitable verdict was 'guilty.'" We disagree.

The language in the capital-murder application paragraph tracked the statutory language contained in Sections 7.02(a) and 7.02(b). Appellant's gang membership was raised by the evidence. The gang names and activities detailed in the charge reflected the

---

[41] *Boyde v. California,* 494 U.S. 370, 380 (1990).

State's theory; however, the inclusion of these details did not endorse that theory, nor were they presented as "established facts." The jurors were clearly instructed to find appellant guilty of capital-murder only if they found the stated elements "from the evidence beyond a reasonable doubt." The wording of the charge was not an improper comment on the weight of the evidence. Point of error seven is overruled.

In point of error eight, appellant argues that *Apprendi* and *Ring*[42] mandate that future-dangerousness "must be proven beyond a reasonable doubt, rather than by the current statutory requirement of a 'probability' of future-dangerousness beyond a reasonable doubt, which is a much lower standard." In points of error nine and ten, he argues that Article 37.071 violates due process and amounts to cruel and unusual punishment. He asserts that the misleading use of the undefined term "probability" permits the jury to find future-dangerousness based on a standard less than "beyond a reasonable doubt."

We have previously upheld the constitutionality of Article 37.071 when faced with these arguments.[43] *Apprendi* and *Ring* have no applicability to Article 37.071 in its current form.[44] The inclusion of the term "probability" does not render the future-dangerousness special issue unconstitutional.[45] The State must prove beyond a reasonable doubt that there

---

[42] *Apprendi v. New Jersey,* 530 U.S. 466 (2000); *Ring v. Arizona,* 536 U.S. 584 (2002).

[43] *Rayford v. State,* 125 S.W.3d 521, 534 (Tex. Crim. App. 2003).

[44] *Id.*

[45] *Id.*

is a probability that the defendant will be a continuing threat to society.[46]  This is constitutionally sufficient.[47]  Points of error eight, nine, and ten are overruled.

In points of error eleven and twelve, appellant contends that Article 37.071 violates the Eighth and Fourteenth Amendments to the United States Constitution "by instructing jurors to decide the likelihood of [appellant's] future-dangerousness through a vague definition of 'continuing threat to society.'"  We have held that the reference to the statutory term "society" is not unconstitutionally vague and that the jury is presumed to understand it without an instruction.[48]  Appellant has not persuaded us to overrule our precedent.  Points of error eleven and twelve are overruled.

In points of error thirteen, fourteen, and fifteen, appellant challenges the version of Article 37.071 under which he was sentenced because it failed to provide the jury with the option to sentence him to life without parole.  He asserts that the statute amounts to cruel and unusual punishment in violation of the Eighth Amendment and offends his rights to due process and equal protection under the Fourteenth Amendment.  We have previously denied such claims,[49] and appellant fails to persuade us that our prior holding is incorrect.  Points of error thirteen, fourteen, and fifteen are overruled.

In points of error sixteen and seventeen, appellant argues that the evidence is legally

---

[46] *Id.*

[47] *Id.*

[48] *Murphy v. State,* 112 S.W.3d 592, 606 (Tex. Crim. App. 2003).

[49] *Arnold v. State,* 873 S.W.2d 27, 39-40 (Tex. Crim. App. 1993).

and factually insufficient to support the jury's affirmative finding on the future-dangerousness special issue. In points of error eighteen and nineteen, appellant contends that the trial court violated the Eighth and Fourteenth Amendments by sentencing him to death without legally or factually sufficient evidence of future-dangerousness.

We do not conduct factual sufficiency reviews of the future-dangerousness special issue.[50] In evaluating legal sufficiency, we view the evidence in the light most favorable to the jury's finding and determine whether any rational trier of fact could have found beyond a reasonable doubt that there is a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society.[51]

The State presented evidence at the guilt phase that appellant, although not a "triggerman," was a gang leader who planned and orchestrated the brutal killings of six rival gang members.[52] At punishment, the State also presented evidence of appellant's prior criminal history. Appellant committed the offense of unauthorized use of a motor vehicle at age fifteen and was placed on probation. He was later committed to TYC after violating the conditions of his probation. He was released on parole shortly thereafter. In July 1991, just a few days before his seventeenth birthday, he committed the offense of attempted

---

[50] *McGinn v. State,* 961 S.W.2d 161, 169 (Tex. Crim. App. 1998).

[51] *Jackson v. Virginia,* 443 U.S. 307 (1979).

[52] In its determination of the future-dangerousness special issue, the jury is entitled to consider all of the evidence presented at both the guilt and punishment stages of trial. *Druery v. State,* 225 S.W.3d 491, 507 (Tex. Crim. App.), *cert. denied,* 128 S. Ct. 627 (2007).

murder when he stabbed a man during an altercation. On September 10, 1991, he was certified to be tried as an adult for that offense. On September 25, 1991, he committed burglary of a habitation. He pleaded guilty to both offenses in 1992 and was sentenced to eighteen years in the Texas Department of Criminal Justice (TDCJ). He committed several disciplinary offenses while incarcerated in TDCJ, including getting into a fist fight with one inmate and stabbing another inmate with a homemade weapon. He was released on parole in April 2002 and committed the instant offense in January 2003. This evidence, viewed in the light most favorable to the jury's finding, was sufficient to support the jury's affirmative answer to the future-dangerousness special issue. Points of error sixteen, seventeen, eighteen, and nineteen are overruled.

In point of error twenty, appellant claims that Article 37.071 violates the Fourteenth Amendment by implicitly placing the burden on the defendant to prove mitigation, rather than requiring the jury to make a finding against the defendant on that issue beyond a reasonable doubt. He also asserts that the aggravating factor of future-dangerousness must be alleged in the indictment before the State can seek the death penalty. In support of these claims, he cites *Apprendi, Ring,* and *Blakely v. Washington.*[53] We have previously rejected these claims,[54] and appellant does not persuade us that our prior cases were wrongly decided.

---

[53] 542 U.S. 296 (2004).

[54] *Roberts v. State,* 220 S.W.3d 521, 535 (Tex. Crim. App.), *cert. denied,* 128 S. Ct. 282 (2007); *Renteria v. State,* 206 S.W.3d 689, 709 (Tex. Crim. App. 2006); *Jones v. State,* 119 S.W.3d 766, 791 (Tex. Crim. App. 2003).

Point of error twenty is overruled.

In points of error twenty-one through twenty-six, appellant argues that Article 37.071 violates the Eighth and Fourteenth Amendments to the United States Constitution. He claims that the mitigation special issue "forces jurors to weigh the aggravating circumstances against mitigating circumstances," and, as a result, it "does not provide a means for jurors to give effect to the mitigating circumstances warranting a life sentence," it "shifts the burden of proof to the defendant to prove that sufficient mitigating circumstances exist to warrant a life sentence," and it "does not require jurors to consider mitigating circumstances alone in determining whether a life sentence is warranted."

The jury's consideration of aggravating circumstances in deliberating on the mitigation issue is permitted, but not required.[55] Article 37.071 does not shift the burden of proof to the accused to prove a mitigating circumstance.[56] We have consistently declined to hold Article 37.071 unconstitutional for failing to assign a burden of proof on the mitigation special issue.[57] Points of error twenty-one through twenty-six are overruled.

In points of error twenty-seven through twenty-nine, appellant argues that Article 37.071 violates the Eighth and Fourteenth Amendments "by failing to provide for any

---

[55] *Hankins v. State,* 132 S.W.3d 380, 385 (Tex. Crim. App. 2004); *Mosley v. State,* 983 S.W.2d 249, 263 n.18 (Tex. Crim. App. 1998).

[56] *Threadgill v. State,* 146 S.W.3d 654, 672 (Tex. Crim. App. 2004).

[57] *Russeau v. State,* 171 S.W.3d 871, 886 (Tex. Crim. App. 2005), *cert. denied,* 126 S. Ct. 2982 (2006); *Resendiz v. State,* 112 S.W.3d 541, 549-50 (Tex. Crim. App. 2003).

meaningful appellate review of the mitigation special issue in the punishment phase of the trial." We have previously rejected this claim.[58] Points of error twenty-seven through twenty-nine are overruled.

In points of error thirty through thirty-three, appellant raises several challenges to the "10-12 rule." Art. 37.071, § 2(d) and § 2(f). He argues that the trial court should have instructed the jury that a single holdout juror on any special issue would result in an automatic life sentence. He asserts that the trial court's failure to do so amounted to cruel and unusual punishment under the Eighth Amendment, denied him due process under the Fourteenth Amendment, and denied him a fair and impartial jury and effective assistance of counsel under the Sixth Amendment.

We have consistently upheld the "10-12 rule" as constitutional.[59] The instructions on answering the special issues do not mislead the jury into thinking that an affirmative answer should be given unless ten or more jurors agree to give a negative one.[60] Any juror who wishes to vote for life contrary to the votes of the majority is given an avenue to accommodate the complained-of potential disagreements, "for every juror knows that capital punishment cannot be imposed without the unanimous agreement of the jury on all three

---

[58] *Renteria,* 206 S.W.3d at 707; *Russeau,* 171 S.W.3d at 886.

[59] *Prystash v. State,* 3 S.W.3d 522, 536 (Tex. Crim. App. 1999); *McFarland v. State,* 928 S.W.2d 482, 519 (Tex. Crim. App. 1996); *Lawton v. State,* 913 S.W.2d 542, 558-59 (Tex. Crim. App. 1995).

[60] *Prystash,* 3 S.W.3d at 536.

special issues."[61]  The "10-12 rule" ensures the proper level of juror deliberation.[62]  It serves this value by not informing the jury of the consequences of a non-verdict, while at the same time ensuring that the death penalty will not be imposed without the unanimous consent of the jury.[63]  Points of error thirty through thirty-three are overruled.

We affirm the trial court's judgment and sentence of death in Count Two.

Delivered:  April 30, 2008

Do Not Publish

---

[61] *Id.* (quoting *Lawton v. State*, 913 S.W.2d 542, 559 (Tex. Crim. App. 1995)).

[62] *Id.* at 537.

[63] *Id.*