Terry Lee HANKINS, Appellant

v.

The STATE of Texas.

No. 74369.

Court of Criminal Appeals of Texas.

April 21, 2004.

Robert Ford, Fort Worth, for Appellant.

Steven W. Conder, Assistant District Attorney, Fort Worth, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

MEYERS, J., delivered the opinion of the Court, in which PRICE, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., join.

Appellant was convicted in May 2002 of capital murder. TEX. PENAL CODE ANN. § 19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, §§ 2(b) and 2(e), the trial judge sentenced appellant to death. Art. 37.071 § 2(g).[1] Direct appeal to this Court is automatic. Art. 37.071 § 2(h). Appellant raises five points of error with numerous subpoints. We affirm.

In point of error one, appellant complains that the trial court erred by improperly restricting voir dire on the topics enumerated in appellant's offer of proof. During voir dire, after the questioning of venireperson Audrey Marie Lawrence and before she was selected as a juror, appellant made the following offer of proof regarding additional matters he sought to raise with Lawrence:

> [Defense counsel]: Judge, before you inquire about our status on this venireperson, if you allowed me, I would call Ms. Lawrence back in and I would first ask her would or could you consider and follow the following definition of reasonable doubt and I would incorporate the reasonable doubt definition that was included in my motion on that very topic, pretrial. I would ask her that question.
>
> Two, I would ask her could you consider and give full deliberation to the parole board requirements for release on parole. And I would ask that question in the context of reading her this passage as far as determination of pa-

role eligibility. The law says that to parole an inmate that's been convicted of a capital felony, all members of the board must vote on the release on parole of the inmate and at least two-thirds of the members must vote in favor of the release on parole. Then the member of the board may not vote for release unless the member first receives a copy of a written report on the probability that the inmate would commit an offense after being released on parole.

> I would next ask her, Judge, could she consider that information in deliberating and answering the mitigation issue.
>
> Fourth, I would ask Ms. Lawrence could you follow the following instruction if you had answered the future dangerousness in the issue [sic] in the affirmative and were then ready to consider the special mitigation issue. And I would voir dire on this proposed instruction or theory. You are instructed to disregard any finding you make beyond a reasonable doubt against the mitigation issue related to future dangerousness. In considering the special mitigation issue, you may not consider any negative finding previously made on the issue of mitigation.
>
> Five, I would voir dire on the special mitigation issue with the beyond a reasonable doubt instruction applied to it, Judge. And the language would read, do you find beyond a reasonable doubt, inserting the language of the special mitigation issue, that there is no or there are none, sufficient circumstances, et cetera, to justify imposition of a life sentence.

\* \* \*

> THE COURT: Those requests are denied.

---

1. Unless otherwise indicated, all references to Articles refer to the Texas Code of Criminal Procedure.

Appellant objected on the basis of the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, and the due course of law and due process provisions of the Texas Constitution. Lawrence was selected for the jury. Appellant sought to raise these issues with six additional venirepersons who were also selected.[2] We will separately address each of the issues on which appellant sought to question the seven prospective jurors.

■ A trial court has broad discretion over the voir dire process. *Sells v. State*, 121 S.W.3d 748, 755–56 (Tex.Crim.App. 2003). Without allowing a trial court the discretion to impose reasonable limits, voir dire could go on indefinitely. Thus, we leave to the trial court's discretion the propriety of a particular question and will not disturb the trial court's decision absent an abuse of discretion. *Id.*

### Reasonable doubt instruction

■ Appellant sought to ask the venirepersons whether they could "consider and follow" the definition of reasonable doubt mandated in *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991). But the *Geesa* instruction was disapproved in *Paulson v. State*, 28 S.W.3d 570, 573–74 (Tex.Crim. App.2000). There, after concluding that the *Geesa* instruction was redundant and confusing and was not constitutionally or statutorily required, we overruled the portion of the *Geesa* opinion requiring the instruction, and stated that "the better practice is to give no definition of reasonable doubt at all to the jury." *Id.* at 573. Because the *Geesa* instruction is no longer required, the trial court did not abuse its discretion in refusing appellant's request

to ask the venireperons whether they could consider and follow it.

### Parole board consideration

■ Appellant wanted to inform the prospective jurors that two-thirds of the members of the parole board must vote in favor of releasing an inmate on parole, after first receiving a copy of a report on the probability that the inmate would commit another offense upon release. TEX. GOV'T CODE § 508.046. Appellant then sought to ask the prospective jurors whether they could "consider and give full deliberation to the parole board requirements for release." Appellant argues that the recent legislative changes now allow the jury to be informed that a capital-murder inmate is not eligible for parole until he has served forty calendar years, which opens the door for full consideration by the jury of any procedures relating to parole and the parole board. Art. 37.071 § 2(e)(2)(B). Appellant argues that without full information regarding the parole process, "a juror lacks the basis to make a meaningful decision on whether life without parole is a suitable punishment." [3]

This Court has historically held that parole is not a proper matter for jury consideration and therefore the trial court does not abuse its discretion by refusing to allow voir dire inquiries regarding parole. *Feldman v. State*, 71 S.W.3d 738, 757 (Tex. Crim.App.2002); *Wright v. State*, 28 S.W.3d 526, 537 (Tex.Crim.App.2000), *cert. denied*, 531 U.S. 1128, 121 S.Ct. 885, 148 L.Ed.2d 793 (2001). Effective September 1, 1999, Article 37.071 was amended to provide that a jury may now be instructed

---

2. Appellant raises a separate subpoint for each of the seven prospective jurors he sought to question, designated as point of error one, one-A, one-B, one-C, one-D, one-E, and one-F.

3. We note that "life without parole" is not a punishment option in capital cases. Art. 37.071.

on a capital defendant's eligibility for parole, as follows:

> Under the law applicable in this case, if the defendant is sentenced to imprisonment in the institutional division of the Texas Department of Criminal Justice for life, the defendant will become eligible for release on parole, but not until the actual time served by the defendant equals 40 years, without consideration of any good conduct time. It cannot accurately be predicted how the parole laws might be applied to this defendant if the defendant is sentenced to a term of imprisonment for life because the application of those laws will depend on decisions made by prison and parole authorities, but eligibility for parole does not guarantee that parole will be granted.

Art. 37.071 § 2(e)(2)(B). However, this provision is narrowly drawn and does not render every aspect of parole law an issue for jury consideration. The provision expressly discourages speculation on the parole process by providing that application of the parole laws cannot be accurately predicted "because the application of those laws will depend on decisions made by prison and parole authorities." *Id.* The legislature could have written the 1999 amendments more broadly to impart more information but chose not to. Accordingly, precedent maintaining that parole is not a proper issue for jury consideration remains in effect except to the extent explicitly provided for in Article 37.071 § 2(e)(2)(B).

### Parole board information as mitigating factor

■ At trial, appellant sought to question the prospective jurors about whether they could "consider [the parole board release] information in deliberating and answering the mitigation issue." Because appellant does not provide any argument or authority in support of this contention, it is inadequately briefed. Tex.R.App. P. 38.1.

### Instruction to disregard affirmative finding on future-dangerousness issue

Appellant sought to ask the venirepersons whether they could adhere to the following instruction if they answered the future-dangerousness question in the affirmative: "You are instructed to disregard any finding you make beyond a reasonable doubt against the mitigation issue related to future dangerousness. In considering the special mitigation issue, you may not consider any negative finding previously made on the issue of mitigation." Appellant argues that consideration of all evidence that mitigates either for or against imposition of the death penalty is at odds with an affirmative finding on the future-dangerousness issue, thereby calling for the requested instruction to disregard the future-dangerousness finding.

■ The future-dangerousness issue asks the jury to consider all the evidence and determine whether there are certain aggravating factors beyond a reasonable doubt. Although consideration of aggravating circumstances in deliberating on the mitigation issue is permitted, it is not *required*. *Mosley v. State*, 983 S.W.2d 249, 263 n. 18 (Tex.Crim.App.1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). Even when aggravating circumstances are considered in the context of the mitigation issue, the fact finder's purpose differs when considering those same circumstances on the question of future dangerousness. In the context of future dangerousness, aggravating circumstances are considered in determining whether to "impose" the death penalty; in the context of the mitigation issue, "aggra-

vating circumstances [are] used to determine whether the jury should 'decline to impose' the death penalty." *Id.* Thus, an affirmative finding on the first does not necessarily compel a negative answer on the latter. *See id.* (explaining that the future dangerousness issue meets "eligibility" requirement while the mitigation issue is one of "selection").

#### Application of reasonable doubt standard to mitigation issue

Finally, appellant sought to advise the venirepersons that they must apply the beyond a reasonable doubt standard to the mitigation issue. As argument and authority in support of the requested instruction, appellant directs us to point of error three. In point of error three, appellant claims that the mitigation issue is unconstitutional in its failure to provide a burden of proof. He cites *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

We have repeatedly held the absence of a burden of proof in the mitigation issue does not violate due process. *Sells,* 121 S.W.3d at 767; *Valle v. State,* 109 S.W.3d 500, 504 (Tex.Crim.App.2003). And we have specifically rejected the claim that the absence of a burden of proof violates *Apprendi. Allen v. State,* 108 S.W.3d 281, 285 (Tex.Crim.App.2003); *Resendiz v. State,* 112 S.W.3d 541, 550 (Tex.Crim.App. 2003). We have likewise rejected such claim as violating *Ring. Rayford v. State,* 125 S.W.3d 521, 529–30 (Tex.Crim.App. 2003), *reh'g denied,* (2004). Points of error one through one-F are overruled.

■ In point of error two appellant claims that the trial court abused its discretion by failing to instruct the jury that the State bears the burden of proof beyond a reasonable doubt on the mitigation issue. Appellant relies upon *Apprendi* and *Ring* to support his position.

For the reasons stated in the previous point of error, *Apprendi* and *Ring* do not require the State to prove beyond a reasonable doubt that there are no mitigating circumstances that would warrant forgoing the death penalty. *Allen,* 108 S.W.3d at 285; *Resendiz,* 112 S.W.3d at 550. The trial court did not abuse its discretion in failing to include such instruction. Point of error two is overruled.

■ In point of error two-A, appellant claims that the trial court abused its discretion by failing to instruct the jury about parole for a capital life offender, in violation of the Sixth and Eighth Amendments. At trial, appellant sought to include in the charge the following additional instruction on the operation of the parole laws:

> To release on parole an inmate who is convicted of a capital felony who must serve 40 calendar years before becoming eligible for release on parole, all members of the board must vote on the release on parole of the inmate and at least two-thirds of the members must vote in favor of the release on parole. A member of the board may not vote on the release unless the member first receives a copy of a written report from the department on the probability that the inmate would commit an offense after being released on parole.

The trial court's charge at punishment tracked the statutory language appearing in Article 37.071. As previously explained in connection with points of error one through one-F, with the exception of the instruction explicitly laid out in Article 37.071 § 2(e)(2)(B), parole is otherwise not a proper issue for jury consideration in capital cases. The trial court properly instructed the jury pursuant to section 2(e)(2)(B). It did not abuse its discretion

in denying appellant's requested charge.[4] Point of error two-A is overruled.

In point of error three, appellant claims that the mitigation issue is unconstitutional because it lacks a burden of proof. Art. 37.071 § 2(e)(1). Appellant says that there is virtually no difference between the future-dangerousness issue and the mitigation special issue except for the addition of the moral culpability component in the mitigation issue. He claims that in the context of future dangerousness, the lack of mitigation evidence is an aggravating circumstance, while in the context of the mitigation issue, the presence of aggravating evidence supports imposition of the death penalty.

■ The mitigation issue is not unconstitutional for lack of a burden of proof. *Sells,* 121 S.W.3d at 767; *Valle,* 109 S.W.3d at 504; *Allen,* 108 S.W.3d at 285. And the distinction between the mitigation issue and the future-dangerousness issue is discussed in connection with points of error one through one-F above. Point of error three is overruled.

In point of error four, appellant claims that the trial court erred in denying his request to conduct a pretrial hearing and gather evidence on the question of the unconstitutional application of the death penalty. Appellant filed a pretrial motion claiming that the Texas death-penalty statute is unconstitutional for its failure to provide a consistent state-wide method for determining in which cases the death penalty would be sought. In connection with this motion, appellant subpoenaed district attorneys from five different counties.

The district attorneys each filed motions to quash their subpoenas. A hearing was held on appellant's motion, at which appellant offered into the record the questions he sought to ask the district attorneys, and the trial court granted the district attorneys' motions to quash. Appellant called a defense attorney to testify about the federal selection system and arguments were presented by the parties. Appellant's motion was overruled. Appellant objected to the court's overruling of his motion and to the quashing of the subpoenas on the basis of the Fourteenth and Eighth Amendments. On appeal, appellant argues that the trial court's rulings violated his Sixth Amendment compulsory process rights by failing to allow him to present and develop evidence in his defense against the death penalty.

■ The State has discretion to seek the death penalty and this prosecutorial discretion is not unconstitutional. *Cantu v. State,* 842 S.W.2d 667, 692 (Tex.Crim. App.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993); *Barefield v. State,* 784 S.W.2d 38, 46 (Tex. Crim.App.1989), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3256, 111 L.Ed.2d 766 (1990). *See also Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (holding that prosecutorial discretion was not unconstitutional). We have specifically rejected the claim that this discretion violates the Eighth and Fourteenth Amendments. *See Ladd v. State,* 3 S.W.3d 547, 574 (Tex.Crim.App.1999). Appellant raises no novel argument to persuade us to re-visit these holdings.

---

4. Appellant complains in his brief that the capital punishment statute allows a jury to give full consideration to parole, in contrast to the noncapital punishment statute which admonishes the jury that they are "not to consider the manner in which the parole law may be applied to this particular defendant" and provides that "evidence on the operation of parole and good conduct time laws" is not admissible. *Compare* Art. 37.071 *with* Art. 37.07. However, we do not address this argument since he did not complain of the charge on this basis at trial. TEX.R.APP. PROC. 33.1.

■ Appellant now claims that his Sixth Amendment rights were violated because he was prevented from developing evidence that would call his selection as a death-penalty candidate into question. However, appellant was not entitled to subpoena District Attorneys and question them regarding the exercise of their discretion which we have held to be constitutional. Thus, the trial judge was not required to allow appellant to present such evidence and did not err by overruling appellant's motion and by quashing the subpoenas. Point of error four is overruled.

■ In point of error five, appellant claims that the trial court erred in failing to find the facts alleged in his arrest warrant affidavit insufficient to support a finding of probable cause. He also complains that trial testimony revealed that one of the facts alleged in the affidavit was incorrect. He argues that the taint on the evidence from the illegal arrest was not attenuated, thus making the evidence inadmissible. The only evidence appellant points to in connection with this complaint is his first written statement.[5]

■ In assessing the sufficiency of an affidavit for an arrest or a search warrant, the reviewing court is limited to the four corners of the affidavit. *Jones v. State*, 833 S.W.2d 118, 123 (Tex.Crim.App.

1992), *cert. denied*, 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993). The reviewing court should interpret the affidavit in a common sense and realistic manner, recognizing that the magistrate was permitted to draw reasonable inferences. *Id.* at 124.

The facts that can be derived from the four corners of appellant's arrest warrant affidavit are: (1) three dead bodies were discovered in a mobile home; (2) the victims were appellant's wife and her two children; (3) appellant had recently been released from jail and was living with the victims in the mobile home where the bodies were found; (4) appellant's wife's car was missing from the scene; (5) the victims were killed with a gun and appellant was in possession of a gun; (6) an unsigned note stating "I am guilty of murder, incest, hatred, fraud, theft, jealously [sic], and envy" was found inside the mobile home on an envelope addressed to appellant;[6] (7) appellant had previously assaulted another woman; (8) appellant's wife's car was parked outside of his girlfriend's apartment; (9) at 2 a.m., appellant asked his girlfriend to check to see if there was anything unusual outside of her apartment; and (10) when approached by officers outside of her apartment, appellant's girlfriend told the officers that appellant was inside her apartment, that he was armed with a pistol and had access to a

5. In this point of error, appellant complains of the trial court's failure to suppress the *arrest warrant*, but at the close of his argument, appellant maintains that the taint from the illegal arrest calls for suppression of the *evidence obtained* as a result thereof. We assume appellant's complaint is directed at the failure to suppress *evidence*, not the *arrest warrant* itself.

6. The allegedly incorrect allegation concerned the envelope. At trial, two police officers testified that the envelope referred to in the affidavit did not in fact display an address. Rather, there was a window on the front of

the envelope where the address was supposed to show through. Found next to the envelope at the crime scene was a bank notice of insufficient funds addressed to appellant. The handwritten note was written mostly on the back of the insufficient funds notice, with one line of the note written on the back of the envelope. The discrepancy between the evidence and the description in the affidavit was explained as a miscommunication over the phone between the officers at the scene and the officer who prepared the affidavit. We need not address the issue of incorrect facts since the affidavit is insufficient nonetheless.

rifle and another pistol, that he had been staying with her for several days, and that he had been driving his wife's car.

While these facts together might create suspicion, we agree with appellant that they do not add up to probable cause that appellant committed the murders. There were no facts that would lead a neutral and detached magistrate to conclude that appellant was the perpetrator and not merely living with his wife and driving her car. There is nothing to show that the note was written by appellant. Even if the envelope on which the note was written was, as alleged, addressed to appellant, it was found at the crime scene where appellant was living. The note could have been written by anyone who picked up the envelope while inside the residence. None of the facts as alleged specifically tie appellant to the commission of the offense. *Compare Earhart v. State*, 823 S.W.2d 607, 631 (Tex.Crim.App.1991)(holding that arrest warrant affidavit was sufficient to establish probable cause where it alleged that the child victim had disappeared, that defendant encountered the victim about a week before her disappearance at which time defendant "paid a lot of attention" to her, that defendant was seen by several people in the victim's neighborhood on the day she disappeared, that defendant specifically asked a neighbor when the victim's family was expected home on the date of her disappearance, that a car matching the description of defendant's car was seen at the victim's home, that the victim was seen talking to the car's occupant on the afternoon of her disappearance, and that defendant left town within two days of the victim's disappearance), *vacated on other grounds*, 509 U.S. 917, 113 S.Ct. 3026, 125 L.Ed.2d 715 (1993); *Gibbs v. State*, 819 S.W.2d 821, 830–31 (Tex.Crim.App.1991)(concluding that the

arrest warrant affidavit established probable cause where it alleged facts demonstrating that defendant was in proximity of the location of the crime when the crime was committed, that defendant wore boots early in the evening on the night of the offense, but left for a while and was not wearing the boots when he returned, that these same boots were stained with human blood when they were recovered from defendant's apartment at the complex where the crime was committed, that defendant concocted a series of lies to divert the attention of police away from himself and the commission of the crime, and that property stolen from the victim was recovered from defendant's possession), *cert. denied*, 502 U.S. 1107, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1992).

When the affidavit supporting an arrest warrant is insufficient, the question is then whether the resulting taint on the evidence was attenuated, such that the evidence was admissible notwithstanding the illegal arrest. *Id.* In assessing whether the taint on the evidence is sufficiently attenuated, the United States Supreme Court has identified the following factors for consideration:

(1) whether *Miranda* warnings were given;

(2) the temporal proximity of the arrest and the confession;

(3) the presence of intervening circumstances; and

(4) the purpose and flagrancy of the official misconduct.

*Id.* (citing *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). The only evidence discussed by appellant in analyzing this issue is his first written statement.[7]

---

7. Complaint as to any other evidence is waived. Tex.R.App. P. 33.1.

Appellant was informed of his rights by the judge during his arraignment at 4:05 p.m. on August 30, 2001. At 4:25 p.m., appellant agreed to talk with Detectives Ralph Standefer and Barry Moore. Standefer read appellant his *Miranda* rights at the outset of the interview. Appellant sat next to Standefer and read the warning sheet along with him, initialing each right stated therein. About an hour into the interview, appellant agreed to give a written statement. Before appellant signed the transcribed statement, Moore read appellant his *Miranda* rights from the statement form. Thus, the first factor weighs in the State's favor. As to proximity, appellant was arrested and taken into custody around 7:00 a.m. on August 30, 2001. He was initially taken to the Arlington police station, but was later transported to the Mansfield jail for arraignment. He was arraigned at 4:05 p.m. and his interview began immediately thereafter, at around 4:30 p.m. He began dictating his statement at 5:40 p.m. Nine and a half hours from the time of appellant's arrest until his interview is not so long that it becomes a particularly weighty factor for the State, but it is not so little that it favors appellant. *Compare Bell v. State,* 724 S.W.2d 780, 788–91 (Tex.Crim.App.1986)(concluding that one and a half to three hours before the first confession favored defendant but the passage of a day before the second confession favored the State), *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). Thus, this factor does not weigh in favor of either party. The most important intervening circumstance in this case is appellant's arraignment before Judge Bill Lane at 4:05 p.m. Judge Lane gave appellant a written warning sheet, which appellant signed. The Judge also informed appellant of the charge against him, and read him his constitutional rights. Appellant asked Judge Lane about the process for obtaining an attorney because he was worried that he would not be able to afford one. Judge Lane explained the process for the appointment of an attorney, and then asked appellant if he would like an attorney. Appellant declined. Finally, there is no suggestion or evidence of official misconduct. Given the various readings of appellant's rights, his arraignment, and the absence of any official misconduct, this factor weighs in the State's favor. *Jones,* 833 S.W.2d at 125 (stating that, coupled with *Miranda* warnings and the absence of official misconduct, taking defendant before a neutral magistrate was an intervening circumstance sufficient to attenuate taint). Accordingly, the four factors viewed together weigh most heavily in the State's favor such that appellant's first written statement was not tainted by his illegal arrest. Point of error five is overruled.

The judgment of the trial court is affirmed.

KELLER, P.J., concurred in point of error five and otherwise joins the opinion of the Court.

WOMACK, J., concurred.