Affirmed and Memorandum Opinion filed July 24, 2008








Affirmed and Memorandum Opinion filed July 24, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00209-CR

____________

 

ALEXIS SILVA ROSA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 337th
District Court

Harris County, Texas

Trial Court Cause No. 1079307

 



 

M E M O R A N D U M  O P I N I O N

A jury found appellant Alexis Silva Rosa guilty of murder
and assessed punishment at confinement for life in the Texas Department of
Criminal Justice, Institutional Division.  The trial court sentenced appellant
accordingly.  In a single issue, appellant contends the trial court erred in
denying his motion to suppress his oral statement given after his arrest
pursuant to a warrant.  We affirm.








I.  Factual and Procedural
Background

The decedent=s daughter, Ana
Oviedo, found the body of her mother, Aurelia Ybarra, on Saturday July 8,
2006.  Before her death, Oviedo or her brother talked with their mother by
telephone every day.  Oviedo last spoke with her mother on Wednesday, July 5. 
When Oviedo was unable to reach her mother by telephone on Thursday and Friday,
she was worried, so Oviedo, her brother, and her sister-in-law, drove to
Houston from Mt. Vernon, Texas.  They arrived around 4:00 a.m., Saturday
morning.  Ybarra=s trailer door was locked, and Ybarra=s car was gone. 
Oviedo crawled through a window in the master bedroom, and let her brother and
sister-in-law in through the door.  As Oviedo walked from the master bedroom to
the door, she saw nothing out of place.  Oviedo subsequently discovered her
mother=s body, completely
covered with a blanket, on the floor of the second bedroom.  Oviedo=s brother and
sister-in-law called 911.

Harris County Sheriff=s Department
Officer Shawn Woelk arrived at the trailer at 5:35 a.m.  By that time, other
officers had secured the trailer as a crime scene.  The officers observed no
signs of a forced entry.  With the exception of the second bedroom, the trailer
was neat, clean, and orderly, with no sign of a struggle or disturbance.  Other
than Ybarra=s vehicle, nothing was obviously missing.  Woelk
believed Ybarra=s killing had occurred in the second
bedroom because of the blood spatter he observed there.

Oviedo told Woelk she and her brother and sister-in-law
drove to Houston because she feared her mother might have been involved in an
altercation with appellant.  Just days earlier, Ybarra related to Oviedo that
appellant had been very upset when Ybarra told him she did not love him and did
not know why he stayed around.  Ybarra also told Oviedo that appellant had
threatened to kill her.  Oviedo told Woelk she last spoke with her mother July
5 around 10:00 p.m.








Three male friends of the family, one of whom was Benjamin
Aguilar, told Woelk they were at Ybarra=s home around 9:00
or 9:30 p.m. July 1 watching movies with Ybarra when Aan older Hispanic
fellow@ appeared on
Ybarra=s porch.  The man
was extremely upset that the three of them were at Ybarra=s trailer.

While Woelk was at the crime scene, one of appellant=s past employers
arrived, possibly in response to a call from Oviedo.  The employer provided a
copy of appellant=s employment papers, including a copy of
his Immigration and Naturalization Service identification, a copy of his driver=s license, picture
identification, and addresses.

Woelk later spoke with Immigration and Customs Enforcement
(ICE) agents who directed Woelk to Felipe Martinez, the agent monitoring
appellant=s actions in the United States.  According to
Martinez, appellant was supposed to be in the Fort Worth area where he was
working.  Martinez also provided appellant=s cellular
telephone number.

Woelk obtained a court order for Ybarra=s cellular and
home telephone numbers and for appellant=s cellular
telephone number.  From July 3 through July 5, there were  twenty-nine outgoing
calls from appellant=s cellular telephone to Ybarra=s home or
cellular  telephone.  The calls on July 4 and 5 were all dialed using star 67,
which is an anonymous caller code.  The records indicated appellant=s last call from
Fort Worth on July 5 was at 9:39 p.m.  He then used his phone in Houston at
2:15 a.m. July 6, and again in Fort Worth on 10:26 a.m. the same morning. 
There were no calls July 6 and 7.  On July 9 and 11, there was one call each
day from the Miami area, using star 67.








Woelk contacted Agent Martinez and requested that he call
appellant into his office so they could meet with him.  Woelk executed an
arrest warrant affidavit and obtained a warrant for appellant=s arrest.  On
August 4, Woelk and Sheriff=s Department Deputy Investigator Officer
Mario Quintanilla went to ICE headquarters in Fort Worth and took appellant
into custody.  Officer Quintanilla read appellant the Miranda warnings
in Spanish.  Appellant waived his rights and gave a statement, which was
audio-taped.  A Tarrant County judge subsequently gave appellant the magistrate
warnings, and Woelk and Quintanilla transported appellant to Houston.

Appellant was charged with murder.  He filed a motion to
suppress, which the trial court heard and denied.  At trial, the State introduced
appellant=s statement, in which he confessed to being at Ybarra=s home July 6, at
Ybarra=s request, but
stated Ybarra attacked him with a knife, he pushed her, and she fell.  The jury
found appellant guilty and assessed punishment at confinement for life.  The
court rendered judgment on the jury=s verdict.

II.  Issue Presented

In a single issue, appellant contends the trial court
reversibly erred in denying his motion to suppress his oral statement because
the affidavit in support of the arrest warrant did not contain sufficient facts
to establish probable cause he committed Ybarra=s murder.

III.  Analysis

A.      Standard
of Review and Legal Principles 

When reviewing a ruling on a motion to suppress evidence, we afford
almost total deference to the trial court=s determination of
the historical facts.  Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim.
App. 2007).  We review de novo questions of law and mixed questions of law and
fact not turning on an evaluation of credibility and demeanor.  Id.








An arrest warrant affidavit must provide the magistrate
with sufficient information to support an independent determination that
probable cause exists to believe the accused has committed a crime. McFarland
v. State, 928 S.W.2d 482, 509B10 (Tex. Crim.
App. 1996), overruled on other grounds, Mosley v. State, 983
S.W.2d 249, 263 n.18 (Tex. Crim. App. 1998).  In assessing the sufficiency of
an affidavit for an arrest or a search warrant, we are limited to the four
corners of the affidavit and are to interpret the affidavit in a common sense
and realistic manner, recognizing the magistrate is permitted to draw
reasonable inferences.  Hankins v. State, 132 S.W.3d 380, 388 (Tex.
Crim. App. 2004).  We should give the issuing magistrate=s determination
great deference and sustain it so long as there was a substantial basis for
issuing the warrant.  See Illinois v. Gates, 462 U.S. 213, 236, 103 S.
Ct. 2317, 2331 (1983).[1]

B.      Application
of the Law to the Facts 

Detective Woelk=s affidavit for
appellant=s arrest set forth the following facts:

$                  
appellant was
Ybarra=s boyfriend and had dated Ybarra
for the last two to three years;

$                  
appellant did
not live with Ybarra, but lived in Fort Worth, Texas, and Miami, Florida;

$                  
Benjamin
Aguilar told Woelk he had been at Ybarra=s trailer watching movies with Ybarra around 9:30 p.m. on
July 1, 2006, when he saw appellant standing on the porch looking upset and
angry;

$                  
Ybarra told
Oviedo she wanted to end the relationship with appellant and had told Oviedo
that about a year ago;

$                  
Ybarra told
Oviedo appellant was a very jealous person and told her he would rather see her
dead than see her with another man;

$                  
Oviedo had
heard appellant make the same statement during the past year;

$                  
Oviedo last
spoke with Ybarra on Wednesday, July 5, 2006, about 10:00 p.m.;

$                  
during the July
5 conversation, Ybarra told Oviedo appellant had become angry with her, broken
a wine glass, acted as if he were going to cut his wrist with the broken glass,
and told Oviedo he was going to kill her so she would not be with anyone elseCthese events occurred on Tuesday
(July 4), and appellant left on Wednesday;

$                  
on Wednesday
(July 5) around 3:00 p.m., Ybarra told Oviedo appellant had told her he had
been listening on the other telephone line, believed Ybarra was cheating on
him, and ripped up the agenda Ybarra used as a telephone book;








$                  
the telephone
records for appellant=s cellular telephone number
reflected six star 67 calls originating from the Fort Worth area from appellant=s number to Ybarra=s home telephone on July 5 from
9:27 p.m. to 10:24 p.m.;

$                  
the telephone
records also showed one call from appellant=s number, originating from the Houston area, to Miami
around 2:15 a.m.; and

$                  
the assistant
medical examiner who perform the autopsy of Ybarra=s body stated, in her opinion,
Ybarra died as a result of a blunt impact trauma of the head and upper
extremities.

The affidavit compares favorably to that held sufficient to
establish probable cause in Earhart v. State, 823 S.W.2d 607, 631 (Tex.
Crim. App. 1991), vacated on other grounds, 509 U.S. 917, 113 S. Ct.
3026 (1993).  In Earhart, the affiant alleged (1) the child victim had
disappeared, (2) the defendant encountered the victim about a week before her
disappearance, at which time the defendant Apaid a lot of
attention@ to her, (3) the defendant was seen by several people
in the victim=s neighborhood on the day she disappeared, (4) the
defendant specifically asked a neighbor when the victim=s family was
expected home on the date of her disappearance, (5) a car matching the
description of the defendant=s car was seen at the victim=s home, (6) the
victim was seen talking to the car=s occupant on the
afternoon of her disappearance, and (7) the defendant left town within two days
of the victim=s disappearance.  Id.








Analogous to the defendant=s alleged actions
in  Earhart, appellant=s alleged actions in the present case
included (1) recent contact with the decedent, (2) behavior consistent with
having committed the alleged offense (paying a lot of attention to the
kidnapped and murdered child victim in Earhart; expressing and exhibiting
jealousy and making threats to kill Ybarra here), (3) presence near the scene
at the time the offense was committed (supported by witnesses= observations in Earhart
and by appellant=s cellular telephone records here), and
flight shortly after the apparent time of the crime (two days in Earhart and
the same night here).  In addition, the affidavit in the present case referred
to the fact appellant had used star 67 to call Ybarra on July 5, supporting an
inference appellant believed Ybarra would not answer if she knew appellant was
calling her; yet he traveled from Fort Worth to Houston the same night.  Just
as the alleged facts in the Earhart arrest warrant were sufficient to
establish probable cause in Earhart, so the facts are sufficient in the
present case.[2]

We conclude the facts contained in the four corners of the
arrest warrant affidavit provided sufficient information to support the
magistrate=s independent determination that probable cause
existed to believe the appellant had committed a crime.  See McFarland,
928 S.W.2d at 509.  We overrule appellant=s sole issue.

 

 

 

 








IV.  Conclusion

Having overruled appellant=s sole issue, we
affirm the judgment of conviction.

 

 

 

/s/      Eva M. Guzman

Justice

 

 

Judgment rendered
and Memorandum Opinion filed July 24, 2008.

Panel consists of
Justice Yates, Guzman, and Brown.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Although Gates
involved a search warrant, rather than an arrest warrant, the standards
used to judge the showing of probable cause are the same for both.  Ware v.
State, 724 S.W.2d 38, 40 (Tex. Crim. App. 1986).





[2]  We acknowledge the Court of Criminal Appeals found an affidavit
insufficient in Hankins v. State, 132 S.W.3d 380, 388B89 (Tex. Crim. App. 2004).  In Hankins, the Court of Criminal Appeals
further held the defendant=s statement was
not tainted by his illegal arrest and affirmed the judgment of conviction.  Id.
at 390.

We conclude Hankins is
distinguishable from the present case.  In Hankins, the court discounted
allegations in the arrest warrant that would have connected the defendant with
the crime scene and with the victim=s
home and car, stating:

There were
no facts that would lead a neutral and detached magistrate to conclude that
appellant was the perpetrator and not merely living with his wife and driving
her car.  There is nothing to show that the note was written by appellant. 
Even if the envelope on which the note was written was, as alleged, addressed
to appellant, it was found at the crime scene where appellant was living.  The
note [found on an envelope at the crime scene] could have been written by
anyone who picked up the envelope while inside the residence.

Id. at 389. 
Importantly, in Hankins there were no recent threats or arguments, as we
have here. Further, unlike the victim and the defendant in Hankins,
appellant and Ybarra were not married.  Additionally, appellant did not live with
Ybarra, but lived in Fort Worth, a city over two hundred miles from Houston. 
Finally, appellant=s trip to Houston on July 5 was preceded by six
anonymous telephone calls from appellant to Ybarra.  There is no information
appellant had any legitimate reason to be in Houston on July 5.  Cf. 
Strickland v. State, No. 05-04-00405-CR, 2005 WL 248629, at *3 (Tex. App.CDallas Feb. 3, 2005, pet. ref=d) (not designated for publication) (distinguishing Hankins
on ground Strickland and decedent were not married and there was no information
Strickland had any reason to be driving decedent=s truck).