

# NUMBER 13-10-00264-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE: THE STATE OF TEXAS

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Vela
Memorandum Opinion by Chief Justice Valdez[1]**

Relator, the State of Texas, acting by and through Armando R. Villalobos, the Cameron County and District Attorney, filed a petition for writ of mandamus in the above cause on May 3, 2010, contending that the trial court abused its discretion in ordering Villalobos "to testify regarding his trial strategy or discretionary functions as Prosecutor."[2] The Court requested and received a response to the petition for writ of mandamus from

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When granting relief, the court must hand down an opinion as in any other case."); TEX. R. APP. P. 47.4 (distinguishing opinions and memorandum opinions).

[2] The underlying cause was originally assigned to be heard by the Honorable Arturo Cisneros-Nelson. Judge Nelson recused himself and the Honorable Noe Gonzales, respondent herein, was thereafter appointed to hear this case.

John Allen Rubio, the real party in interest, and further received a reply thereto from the State. As stated herein, we disagree with relator's characterization of the underlying matter and, accordingly, deny the petition for writ of mandamus.

## I. STANDARD OF REVIEW

Mandamus relief may be granted if the relator shows that: (1) the act sought to be compelled is purely ministerial; and (2) there is no adequate remedy at law. *See Deleon v. Dist. Clerk*, 187 S.W.3d 473, 474 (Tex. Crim. App. 2006) (orig. proceeding). The relator must have a "clear right" to the relief sought and the merits of the relief sought must be "beyond dispute." *See id.* "The requirement of a clear legal right necessitates that the law plainly describes the duty to be performed such that there is no room for the exercise of discretion." *Id.*

## II. BACKGROUND

Rubio was indicted on four counts of capital murder related to the killing and decapitation of his three children. Rubio pleaded not guilty by reason of insanity. A jury found him guilty and rendered a verdict on the issue of punishment that required the trial court to sentence him to death. On appeal, the Texas Court of Criminal Appeals reversed Rubio's judgment of conviction on grounds that the trial court erred during the guilt-innocence phase of the trial by admitting the statements of Rubio's common-law wife and alleged accomplice, Maria Camacho, in the murders for which Rubio was being tried. *Rubio v. State*, 241 S.W.3d 1, 2 (Tex. Crim. App. 2007). Finding harm, the court of criminal appeals remanded the case for a new trial. *See id.*

On remand, counsel for Rubio filed a motion on April 19, 2010, seeking to disqualify the Cameron County and District Attorney and his office from prosecuting Rubio. Pursuant to the motion to disqualify, counsel for Rubio filed an application for a subpoena to obtain

2

the testimony of the District and County Attorney of Cameron County, Armando R. Villalobos.[3] The State moved to quash the subpoena, and the trial court heard arguments on the motion at a pre-trial hearing held on April 29, 2010. At that hearing, the trial court ordered Villalobos to appear to testify on May 4, 2010. This original proceeding ensued.

Based on its presumption about the scope of the anticipated testimony, relator contends that the trial court has ordered Villalobos to appear and testify "*presumably* to facts that would support the April 19, 2010 motion" regarding the disqualification of the District and County Attorney. (Emphasis added). According to relator, "there are no matters upon which the witness can testify that do not go to questions of the mental impressions and thought processes of the State in preparing a criminal case for trial, all of which is strictly protected by the doctrine of work product and/or prosecutorial discretion":

> The Court specifically stated that the purpose of the testimony sought to be elicited from Mr. Villalobos would be to determine whether his refusal to offer a plea bargain for life was motivated by an exercise of prosecutorial discretion or some personal animus . . . . While the State is sensitive to [these] concerns, given the nature of the case, the State believes that to order an elected official to stand and give testimony that his actions were not for an impermissible reason when no evidence of any malfeasance on his part has been submitted by opposing counsel, a dangerous precedent would be set.[[4]]

---

[3] Counsel for Rubio also sought to subpoena Villalobos's assistant and secretary, Corina Galvan; however, the trial court refused to issue a subpoena for Galvan. This matter is not at issue in this original proceeding.

[4] We note that the court of criminal appeals has adopted the "compelling need" test which governs when counsel for the defense may be called to testify in a criminal prosecution. *Flores v. State*, 155 S.W.3d 144, 148 (Tex. Crim. App. 2004). Under this test, the State must show that: (1) there is no feasible alternative for obtaining and presenting the information to the jury except through defense counsel's testimony; and (2) the testimony is essential, not merely relevant, to the State's case. *See id.* It is error to order defense counsel to testify as a witness in the trial unless the trial court determines, outside the presence of the jury, that there is a compelling need for defense counsel's testimony under this two-pronged test. *See id.* In discussing the compelling need test, the court of criminal appeals cited *Ullmann v. State*, 647 A.2d 324, 334 (Conn. 1994), and parenthetically noted that this court adopted the compelling need test to be applied when either side in a criminal case seeks to call a prosecutor or defense attorney, who is or has been professionally involved in the case, to testify. *See id.* at 147-148 n.6.

The State urges that ordering Villalobos to testify violates the work product and executive privileges, impermissibly delves into matters that are protected by prosecutorial discretion, and forces Villalobos to act in a dual role as both advocate and witness in violation of the Texas Disciplinary Rules of Professional Conduct. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt. 4, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005) (TEX. STATE BAR R. art. X, § 9).

In contrast, Rubio contends that Villalobos's testimony is required to investigate the matters that are the subject of Rubio's motion to disqualify Villalobos and his office from prosecuting Rubio. Specifically, Rubio alleges that such testimony is necessary to show "prosecutorial misconduct personally by Mr. Villalobos." Rubio refers to an alleged "blacklist" of attorneys created by Villalobos, which includes Rubio's counsel, and which "includes a stated policy of refusal to plea bargain with any of the lawyers on the list or for that matter to cooperate in discovery." Rubio also alleges that Villalobos has "personally" violated an order not to communicate with the press; that Villalobos has "either directed or is otherwise responsible for abuse of the subpoena process" that has interfered with Rubio's ability to retain experts and produce witnesses; and that Villalobos created a conflict of interest by hiring Rubio's appellate lawyer.[5]

At the hearing on April 29, the trial court discussed the parameters of Villalobos's proposed testimony and set forth specific limitations as follows:

> You are exercising that this is your right to protect yourself from compulsory process. You are arguing that there must be a plausible

---

[5] This is the second original proceeding filed in this Court arising from the prosecution of the real party in interest herein, John Allen Rubio. *See In re Rubio*, 13-09-00415-CR, 2009 Tex. App. LEXIS 5863, at **1-2 (Tex. App.–Corpus Christi July 27, 2009, orig. proceeding) (per curiam) (mem. op., not designated for publication) (denying petition for writs of mandamus and/or prohibition where relator sought to disqualify prosecution based upon alleged conflict of interest due to the State's hiring relator's appellate counsel).

showing. The issue in this case, as has been articulated to the Court, has nothing to do with the mental impressions or thought processes of the State in preparing the criminal case for trial.

*We are not getting into strategy or anything like that*.

Now, if you are telling me that the seeking of the death penalty in this case has to do with a strategic—some sort of strategy in order to get him to take life, well, then, let me know. Because I have seen that done, but I don't think that is what happened here.

In fact, the Court is privy to a conversation between the State, the defense, and the Court where the District Attorney made himself clear to the Court that it was his intention to request the death penalty and try this case, that he believed that this is the type of case that should go to a jury and that he should be seeking the death penalty. He thought that that was his duty. And that's his prerogative. That is his prosecutorial discretion being exercised.

However, I will take note of the fact that Mr. Villalobos is not—and as far as I know, based on everything that I have reviewed, has not been involved in the actual preparation of the trial.[6] He has made policy decisions and he has made prosecutorial discretionary decisions in deciding whether or not to prosecute and whether or not to seek the death penalty.

But I'm looking at the case law and I'm thinking, first of all, it is not work product. *And I won't allow them to get into work product, I don't believe, and I'm not going to—I don't think that they are going to. But if they attempt to, and if you object, I'm going to sustain it. I'm not going to allow them to attempt to question Mr. Villalobos concerning the reasons for prosecuting the case.* I think that it is clear that Mr. Villalobos believes that he has a duty to prosecute any crime, especially a crime of this nature that occurs in his County, as the elected District Attorney.

But there is no question in the Court's mind that the allegation that has been made is an allegation regarding defense lawyers versus the elected District Attorney. Call it politics, call it policy creation, call it whatever you want.

I will not allow this case to become some discussion—public discussion about how the defense lawyers feel about the prosecutors or how the prosecutors feel about the defense lawyers.

If, in fact, this Court is to take its job seriously, and I do, and if the State of Texas is to do what they are supposed to do, which is seek justice,

---

[6] We note that the trial court's observations in this regard were uncontroverted.

then it is imperative that this Court make sure that this allegation they make is ferreted out, and make sure that they proceed with the prosecution of the real facts of this case.

(Emphasis added). Following the hearing, the State filed an emergency motion for stay and the petition for writ of mandamus under consideration in this cause, arguing that the trial court should not have issued an order "directing Mr. Villalobos or his staff to testify regarding his trial strategy or discretionary functions as prosecutor."

### III. ANALYSIS

In determining whether, and when, a prosecuting attorney should provide testimony in a pending criminal case, the law must balance the State's duty to seek justice, and the discretion associated with that duty, with a criminal defendant's right to due process of the law. It is abundantly clear that the real party in interest herein is not entitled to subpoena and question a prosecutor regarding matters devoted to prosecutorial discretion, such as the decision to seek a death penalty. *See Whitaker v. State*, 286 S.W.3d 355, 366 (Tex. Crim. App. 2009) (holding that the defendant was not entitled to remand for development of the record on the State's reasons for seeking the death penalty); *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004) (holding that the trial court did not abuse its discretion in quashing subpoenas for district attorneys because the defendant was not entitled to question them regarding the exercise of their "constitutional" discretion); *Ladd v. State*, 3 S.W.3d 547, 574 (Tex. Crim. App. 1999) ("We have specifically rejected the claim that this [prosecutorial] discretion violates the Eighth and Fourteenth Amendments."); *see also Cantu v. State*, 842 S.W.2d 667, 692 (Tex. Crim. App. 1992); *Barefield v. State*, 784 S.W.2d 38, 46 (Tex. Crim. App. 1989). It is likewise clear that the work product privilege is applicable to litigation files in criminal matters. *See State ex rel. Curry v. Walker*, 873 S.W.2d 379, 381 (Tex. 1994). On the other hand; however, it is equally clear

6

that prosecutors can and must present testimony in other contexts, such as those regarding challenges to the venire under *Batson v. Kentucky*, 476 U.S. 79 (1986). *See, e.g., Whitsey v. State*, 796 S.W.2d 707, 709 (Tex. Crim. App. 1989). Further, prosecuting attorneys routinely testify in matters pertaining to disqualification.[7] *See, e.g., Landers v. State*, 256 S.W.3d 295, 300-301 (Tex. Crim. App. 2008) (involving a district attorney testifying at an evidentiary hearing on disqualification based on an alleged conflict of interest); *State ex rel. Young v. Sixth Judicial Dist. Court of Appeals at Texarkana*, 236 S.W.3d 207, 209 (Tex. Crim. App. 2007) (same); *see also Eleby v. State*, 172 S.W.3d 247, 249 (Tex. App.–Beaumont 2005, pet. ref'd) (same).

At the present stage of the instant proceedings, the relator is seeking relief based on presumptions about the scope of the anticipated questioning and resulting testimony. Based on the record before this Court; however, it is unclear whether the relator's presumptions about the scope of the anticipated questions and testimony are consistent with the trial court's ruling at issue herein. Moreover, and fundamentally, in order for this Court to assess whether the trial court has correctly weighed the interests of the State against the counterbalancing interests of the defendant, we would need a record containing (1) the questions to be posited to Villalobos, (2) the specific objections or

---

[7] As stated by the Texas Court of Criminal Appeals:

> In Texas, the elected district or county attorney "shall represent the state in all criminal cases in the district courts of his district and in appeals therefrom, except in cases where he has been, before his election, employed adversely." The office of a district attorney is constitutionally created and protected; thus, the district attorney's authority "cannot be abridged or taken away." In *State ex rel. Hill v. Pirtle*, we held that "[a] trial court may not disqualify a district attorney or his staff on the basis of a conflict of interest that does not rise to the level of a due-process violation."

*Landers v. State*, 256 S.W.3d 295, 303-04 (Tex. Crim. App. 2008) (quoting *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 927 (Tex. Crim. App. 1994)) (internal citations omitted).

answers to be asserted by Villalobos in response, and (3) the trial court's rulings on the objections. None of these matters have been included in the record before us. *See, e.g., Hankins*, 132 S.W.3d at 387 ("The district attorneys each filed motions to quash their subpoenas. A hearing was held on appellant's motion, at which appellant offered into the record the questions he sought to ask the district attorneys, and the trial court granted the district attorneys' motions to quash."). Stated otherwise, in order for an appellate court to review a ruling on a motion to quash, it typically requires that the proponent of the questions to be asked offer them into the record, the person proffering testimony to answer or assert a privilege, and the trial court to make a ruling on any objections. This procedure has not been followed in this case, and accordingly, the parties and this Court are left to speculate about the potential course of proceedings. As previously stated by this Court:

> The abstract and hypothetical factual and procedural situations that the relator has suggested may arise do not raise "due process" or other constitutional issues at this time. A court has no jurisdiction to render an opinion on a controversy that is not yet ripe. *City of Garland v. Louton*, 691 S.W.2d 603, 605 (Tex.1985).

> To the extent that relator's petition seeks mandamus relief based upon facts that have not yet occurred and are merely hypothetical, we agree with respondent that this court does not have jurisdiction to render advisory opinions on factual situations that may or may not arise in the future.

*Jones v. Westergren*, 771 S.W.2d 669, 671 (Tex. App.–Corpus Christi 1989, no pet.). In short, this Court is prohibited from issuing advisory opinions in our mandamus authority or otherwise. *See* TEX. CONST. art. V, § 6; *Garrett v. State*, 749 S.W.2d 784, 803 (Tex. Crim. App. 1988) (op. on motion for rehearing) (plurality opinion); *Perez v. State*, 938 S.W.2d 761, 764 (Tex. App.–Austin 1997, pet. ref'd).

IV. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus,

the response, and the reply thereto, is of the opinion that relator has not shown itself entitled to the relief sought. Accordingly, the stay previously imposed by this Court is LIFTED, and the petition for writ of mandamus is DENIED. *See* TEX. R. APP. P. 52.8(a).

                                            _____

                                            ROGELIO VALDEZ,
                                            Chief Justice

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Dissenting Memorandum Opinion by Justice Vela.

Delivered and filed the
17th day of May, 2010.

9