Affirmed and Memorandum Opinion filed August 31, 2010



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00348-CR



 

Vernon MICHAEL Scott, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the 262nd
District Court

Harris County, Texas

Trial Court Cause No. 1133007



 

MEMORANDUM  OPINION

 

Vernon Michael Scott appeals his conviction for
capital murder.  He contends (1) the evidence is factually insufficient to
support a conviction for capital murder; and (2) the trial court abused its
discretion in denying his motion to suppress evidence obtained pursuant to an allegedly
unlawful arrest.  We affirm.

I.                  
Factual and Procedural Background

On September 7, 2007, two men entered complainant Jane
Lemoine’s residence and robbed and murdered her while Priscilla Thorne watched.
 Thorne met the complainant that morning for a job interview.  The complainant
worked at the Eastex storage facility.  As a residential manager, the
complainant was required to live on site in a trailer that had both residential
and office sections.  The complainant conducted the interview in the
residential area of the building.

During the interview, while Thorne sat in a chair
near the residence door, a man walked in holding a gun.  He demanded, “all your
money,” and the keys to Thorne’s van.  Thorne immediately gave the man the keys
to her van.  Thorne identified Charles Scott (hereinafter “Charles”),
appellant’s brother, as the gunman from a photo spread she viewed three days
after the crime.  Thorne identified Charles again in court.  During the
robbery, Thorne gave Charles the keys to her van, and was preparing to get on
the floor as instructed when a second man entered the residence.  The second
man immediately turned and locked the dead bolt on the door locking them in the
residence.  As the second man entered, Thorne laid down on the floor.  The second
man was much shorter than Charles and wore a “reddish-orange baseball shirt.”  Thorne
later identified appellant in a live line-up as the man in the orange shirt,
and she identified him in court as the second man to enter the room.

Charles appeared concerned when appellant locked the
door.  In response, appellant said, “Chill out, we’re going out the front.”  Charles
continued to point the gun at the complainant while he demanded that she tell
him where she kept the safe.  The complainant gave the men cash from a purple
folder in which she kept petty cash, and told them they already had all the
money.  Thorne testified that appellant appeared more familiar with the area
and more in control than Charles.  Appellant directed the robbery and reassured
Charles when he locked the door, which led Thorne to believe he was “in charge.”
 Thorne believed the men were workers at the facility based on their
appearances.  Thorne testified that, immediately prior to the shooting, the
room became very quiet, and she believed the intruders intended to shoot someone.
 She heard a gunshot, and the intruders left, but she did not see who fired the
gun.  She testified that although Charles walked in the room holding the gun,
she could not be certain that he fired the gun.  Thorne based this belief on
the men’s demeanor.  She stated that Charles was never forceful or aggressive
with her.  At trial, however, Thorne identified Charles as the “gunman.”

Appellant and Charles appeared to act according to an
organized plan, and they left the building together through the office door.  After
the men left in her van, Thorne went into the office to call for help, but the telephone
had been removed.  She went outside and used a bystander’s mobile phone to call
police and paramedics. 

When the police arrived to investigate, Thorne told
them that the intruders left in her van.  She provided them with the make,
model, and license plate number.  Investigators realized that Thorne’s
description of the intruders matched the storage facility employees’
descriptions of two employees who had not returned to work that morning.

Jeffrey Bottoms worked as a regional manager for the
Eastex storage facility and knew the complainant.  At the time of the murder,
the company employed numerous day laborers to clean up after a recent fire at
the facility.  The complainant hired some day laborers as permanent employees
in which case she had them file tax information, but others filled out
timecards and were paid from petty cash.  The complainant hired appellant to
help clean up and refurbish the burned building.  At the scene, police
recovered a W-4 tax form and two timecards for appellant showing he worked at
the facility as an employee.  Around the middle of August 2007, after appellant
appeared to be under the influence of alcohol or drugs at work, Bottoms told
the complainant to dismiss appellant.  Charles had earlier been terminated for
a similar reason.

After appellant was terminated, the complainant
permitted him to remain on the premises doing odd jobs.  He occasionally washed
dishes and prepared food in the complainant’s residence.  Appellant had open
access to the residence where the complainant lived.  Marcel James, who also
worked at the storage facility, testified that he knew that appellant took the
gun from the complainant’s home because only James, appellant, and the
complainant had open access to the residence.  Appellant’s girlfriend testified
that approximately two weeks before the shooting she had seen appellant in
possession of a weapon similar to the one used in the shooting.

After his arrest, appellant participated in a live line-up
for purposes of identification.  Thorne immediately identified appellant as the
shorter man at the scene of the robbery and murder.  Prior to the line-up
appellant asked the officer conducting the line-up to tell him the results. 
After Thorne identified appellant, the officer informed appellant that he had
been identified by the witness.  Appellant responded, “Not as the shooter, was
I?”  A crime lab investigator obtained DNA from a glove found at the scene of
the shooting and was able to determine that appellant was a possible
contributor of the DNA inside the glove.  

Appellant was convicted of capital murder and
sentenced to life in prison without the possibility of parole.

II.              
Analysis and Discussion

A.    Is the
evidence factually sufficient to support the conviction?

In his first issue appellant admits he participated
as a party to the robbery, but asserts the evidence is factually insufficient
to show that he either encouraged, directed, aided, or attempted to aid the
shooter in the murder, or that he participated in a conspiracy to commit
murder.  In a factual-sufficiency review, we examine the evidence in a neutral
light.  Grotti v. State, 273 S.W.3d 273, 283 (Tex.  Crim. 
App. 2008).  Only one question is to be answered in a factual-sufficiency
review: Considering all of the evidence in a neutral light, was a jury
rationally justified in finding guilt beyond a reasonable doubt?  See id. 
Evidence can be factually insufficient in one of two ways: (1) when the
evidence supporting the verdict is so weak that the verdict seems clearly wrong
and manifestly unjust; and (2) when the supporting evidence is outweighed by
the great weight and preponderance of the contrary evidence so as to render the
verdict clearly wrong and manifestly unjust.  See id.  A reversal for factual insufficiency cannot occur when the greater weight
and preponderance of the evidence actually favors conviction. See id.  Although
an appellate court has the ability to second-guess the jury to a limited
degree, the factual-sufficiency review should still be
deferential to the jury’s role as the sole judge of the weight and credibility
given to any witness’s testimony, with a high level
of skepticism about the jury’s verdict required before a reversal can occur.  See id.

A person commits capital murder if he intentionally
or knowingly commits murder in the course of committing or attempting to commit
robbery.  Tex. Pen. Code §19.03(a)(2).  Under the law of the parties, the State
is able to enlarge a defendant’s criminal responsibility to acts in which he
may not be the principal actor.  Goff v. State, 931 S.W.2d 537, 544
(Tex. Crim. App. 1996).  Section 7.02 of the Texas Penal Code, entitled “Criminal
Responsibility for Conduct of Another,” provides with respect to law of the
parties, in relevant part:

(a) A person is criminally responsible for an offense
committed by the conduct of another if:

. . .

(2) acting with intent to promote or assist the commission
of the offense, he solicits, encourages, directs, aids, or attempts to aid the
other person to commit the offense.

Tex. Pen. Code Ann. §
7.02(a)(2).

Thus, to prove that the accused acted as a party to
an offense, the State must prove that the accused acted with the intent to
promote or assist in the commission of the offense by soliciting, encouraging,
directing, aiding, or attempting to aid the other person in its commission.  Martin
v. State, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988).  In determining
whether the accused participated as a party, the court may look to events
occurring before, during and after the commission of the offense, and may rely
on actions of the defendant which show an understanding and common design to do
the prohibited act.  Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim.
App. 1994).  Party status may be proved by circumstantial evidence.  Id. 
Mere presence at the scene of the offense does not establish guilt as a party
to the offense.  Porter v. State, 634 S.W.2d 846, 849 (Tex. Crim. App.
1982).  Presence at the scene, however, is a circumstance tending to prove
guilt which, when combined with other facts, may suffice to show that the
accused was a participant.  Valdez v. State, 623 S.W.2d 317, 321 (Tex.
Crim. App. 1979).

The record reflects that appellant was in possession
of a handgun similar to that owned by the complainant at least two weeks before
the shooting.  He was one of three people (including the complainant) who had
access to the residence where the gun was kept.  The complainant’s gun
disappeared from her residence approximately two weeks prior to the shooting.  The
eyewitness, Thorne, testified that appellant directed the robbery and appeared
to be “in charge.”  At the time of the robbery, Charles pointed the gun at the
complainant while appellant took the money from the purple folder.  After the
murder both appellant and Charles fled the scene in Thorne’s van.  

Appellant did not present evidence, but relied on his
cross-examination of State’s witnesses.  Appellant’s cross-examination focused
on the witness’s identification of him and whether appellant actually participated
in the offense.  Under the applicable standard of review, we conclude that the
evidence is factually sufficient evidence to support appellant’s conviction for
capital murder.  Accordingly, we overrule appellant’s first issue.

B.     Did
the trial court err in denying appellant’s motion to suppress?

In his second issue appellant complains the trial
court abused its discretion in denying his motion to suppress evidence obtained
pursuant to an allegedly unlawful arrest.  We review a trial court’s ruling on
a motion to suppress evidence under an abuse-of-discretion standard.  Guzman
v. State, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997).  We view the
evidence adduced at a suppression hearing in the light most favorable to the
trial court’s ruling.  Wiede v. State, 214 S.W.3d 17, 24 (Tex. Crim. App.
2007).  At a suppression hearing, the trial court is the sole finder of fact
and is free to believe or disbelieve any or all of the evidence presented.  Id.
at 24–25.  We give almost total deference to the trial court’s determination of
historical facts that depend on credibility and demeanor, but review de novo
the trial court’s application of the law to the facts if resolution of those
ultimate questions does not turn on the evaluation of credibility and demeanor.
 See Guzman v. State, 955 S.W.2d at 89.

Before trial, appellant filed a motion to suppress evidence
he claimed was illegally obtained.  Appellant alleged he was arrested without a
valid warrant or probable cause.  The trial court held a hearing outside the
presence of the jury on the admissibility of Thorne’s identification of
appellant.  At the hearing, appellant’s attorney questioned Thorne about a
television news report of appellant’s arrest.  After the warrant was issued for
appellant’s arrest, appellant voluntarily surrendered to law enforcement
authorities.  Appellant’s voluntary surrender, with the aid of Quanell X, a
local activist, was broadcast on the local news stations in Houston.  Appellant
alleged that Thorne’s identification was based on observing appellant on
television, not on any observation on the day of the robbery and murder.  After
appellant’s arrest, Thorne positively identified appellant as the second man
who entered the residence.  Thorne testified that her identification at the live
line-up and at trial was based on seeing appellant on the day of the robbery
and murder, not from seeing him on television.

Officer Roy Swainson of the Houston Police Department
testified that he showed Thorne a photospread on the night of the robbery and
murder.  The photospread included a four-year-old photo of appellant because
that was the most recent photograph the police department had of appellant. 
Officer Swainson testified that Thorne did not identify anyone when she viewed
the photospread.  When questioned about her inability to identify anyone on the
night of the offense, Thorne admitted she was traumatized that day and did not
feel in the proper frame of mind to view a photospread.

Officer Carless Elliot testified that he conducted
the live line-up following appellant’s arrest.  Appellant asked to be in a
line-up, and waived his right to have his attorney present.  During the
line-up, each member of the line-up was asked to repeat the phrase, “Chill out,
we’re going out this door.”  Officer Elliot testified that Thorne positively
identified appellant.

At the conclusion of the hearing, appellant’s
attorney requested that the trial court take judicial notice of the probable
cause complaint.  He then argued, “there’s no probable cause as to [appellant]
that would have allowed for a warrant to be issued appropriately based on those
facts.”  Appellant then argued that the line-up was improper, which tainted the
in-court identification, because the witness’s identification was affected by
viewing the television news accounts of appellant’s surrender.  The court held
that the line-up was not suggestive.  The court further held that, given Thorne’s
testimony, her identification of appellant in court was based on her
recollection of the events of September 7, 2007, and not suggested by law
enforcement or by any news coverage of appellant on television.  On those
grounds appellant’s motion to suppress was denied.

On appeal, appellant argues that the line-up
identification and the DNA evidence should have been suppressed because the
affidavit on which the arrest warrant was based is conclusory.[1]
 An arrest-warrant affidavit must provide the magistrate with sufficient
information to support an independent determination that probable cause exists
to believe the accused has committed a crime.  Ware v. State, 724 S.W.2d
38, 39–40 (Tex. Crim. App. 1986).  In assessing the sufficiency of an affidavit
for an arrest or a search warrant, we are limited to the four corners of the
affidavit and are to interpret the affidavit in a common sense and realistic
manner, recognizing the magistrate is permitted to draw reasonable inferences.  Hankins
v. State, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004).  We give the issuing
magistrate’s determination great deference and sustain it so long as there was
a substantial basis for issuing the warrant.  See Illinois v. Gates, 462
U.S. 213, 236, (1983).

Examining the four corners of the affidavit and
interpreting the affidavit in a common sense and realistic manner, we conclude there
was a substantial factual basis for issuing the warrant.  From this affidavit,
the magistrate received information that:

·       
Thorne witnessed the robbery/murder and described the assailants
as a tall black male and a shorter black male wearing an orange shirt.

·       
Marcel James described two employees who had not returned to work
after the shooting.  One of the missing employees was named “Mike” and had been
wearing an orange shirt when James last saw him.  James’s descriptions of the
missing employees comported with Thorne’s descriptions of the assailants.

·       
James identified appellant as the employee named “Mike.”

·       
Appellant’s brother Charles was positively identified by Thorne
as the person who shot the complainant.

Following a comprehensive review of the affidavit, we
conclude that the trial did not err in determining that the magistrate had a
substantial basis to believe there was probable cause to arrest appellant.  The
affidavit provided the magistrate with sufficient information to support an
independent determination that probable cause existed to believe that appellant
had committed a crime.  Appellant has failed to show the trial court abused its
discretion in denying his motion to suppress.  Accordingly, we overrule appellant’s
second issue.

The judgment of the trial court is affirmed.

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson, Frost, and Seymore.

Do Not Publish — Tex. R. App. P. 47.2(b).









[1]
At trial, appellant appears to have objected not only to the affidavit attached
to the arrest warrant, but the witness’s identification of him at the line-up. 
On appeal, appellant attacks only the affidavit in support of the warrant. 
Therefore, we will address appellant’s issue with regard to whether the four
corners of the affidavit provided the magistrate with sufficient information to
believe probable cause existed for issuance of an arrest warrant.